Daniel, J.
 

 The lot of land in controversy belonged to Joseph Dean. He leased it to Mrs. Smith for the years 1803 and 1804, and she entered thereon as his tenant. Dean died intestate in the year 1804, and, before Mrs. Smith’s 'lease had ended. She was in law, therefore, the tenant of the lessors of the plaintiffs, who are the heirs at law of Dean. And so long as she continued in the possession of the lot, her possession was the possession of the lessors of the plaintiffs. It is a well settled rule of law, that the tenant cannot be heard to dispute his landlord’s title, on a supposed defect in the title.
 
 Driver and Oxenden
 
 v. Lawrence, 2 H. Black, 1259. Nor, when the tenant' in possession has paid rent to the lessors of the plaintiffs, can a third person come in and defend as landlord without the tenant, and dispute the lessor' of the plaintiff’s title. Neither the tenant, nor any one claiming by him, can controvert the landlord’s title; he cannot put another person into possession, but must deliver up the premises to his own landlord.
 
 Doe and Wright
 
 v. Smythe, 4 M. & S. 347.— Stephens N. P. 1377. If the lessors of the plaintiffs had given Mrs. Smith six months notice to quit, at any time during her possession, she could not have had any defence against their action of ejectment.
 
 She
 
 had the
 
 positio
 
 pedis, and not the Lodge; and her possession could not in law be adverse to that of the lessors of the plaintiffs. The judge erred, we think, when he told the jury, that in this action the possession of Mrs. Smith was the possession of the Lodge. After the house got burned down, Mrs. Smith left the place, and the defendant, Sherman, entered as a tenant of the Lodge in the year 1830 ; and he continued in adverse possession for the space of nine.years, when this action was brought by Dean’s heirs. But the judge said, that his (Sherman’s) possession was without color of title ; as the two papers offered as a will of Dean
 
 *716
 
 did not on their face profess to devise the land, there bein kut one w^tness t0 a°d although it was in the handwritin of Dean, it had never been proved as a will, nor was there any evidence that it had been lodged in the hands of a third person for safe keeping, or had been found among Dean’s valuable papers or effects, as the statute requires. We agree with his Honor that the two papers were not color of title to ripen Sherman’s possession into a good title for the Lodge, by force of the act of limitations. bD bjD
 

 It was then insisted for the defendants, that the great length of time, (35 years) which had elapsed since any rent had been paid to Dean or his heirs, and the constant receipt of the said rents by the Lodge, and also other' acts of ownership by it, raised a presumption that the heirs of Dean had made a conveyance of the lot to the Lodge. The judge said, ¿‘taking the evidence to be true, the Lodge had been in possession 34 years, and this authorised the jury 'to make the presumption of title. And the court instructed the jury, that it was
 
 their duty so to -presume
 
 from the facts stated.” We think that the judge erred in the above charge as applied to this case.— If the heirs of Dean had
 
 actually
 
 made a deed of conveyance of the lot to the Lodge at any time since the death of their ancestor, of course it would defeat the plaintiffs action. And to ascertain that fact, the jury were the judges. That the 35 years time which had elapsed since the Lodge set up claim to the lot, was only to be taken as evidence, which was to go to the jury, with any other evidence or circumstances in the cause, to enable them to find or not to find, whether any such conveyance had
 
 actually
 
 taken place. In
 
 Doe & Fenwick
 
 v.
 
 Reed,
 
 5 Barn. & Ald. 232, where a defendant’s ancestor came into possession of certain lands in 1752, as a creditor under a judgment obtained against the owner of the land, and the defendant’s family had continued in the possession ever since to 1821: Held, that the original possession having been taken, not under any conveyance, but as a creditor, and the possession being thus accounted for, the length of possession was only
 
 prima facie
 
 evidence, from which a jury
 
 *717
 
 alight infer a subsequent conveyance by the original owner or some of his descendants, but that it might be rebutted, and that the jury must not presume such conveyance from that length of possession, unless they were satisfied that it had actually been executed. At any rate, the original consistency of relation between the possession and the opposite title must have been clearly dissolved, and turned into an adverse possession for many years before suit, in order to make it available as a ground of presumption. 1 Mer. 125. Here the possession ceased not in the lessors of the plaintiff’s tenant until 1830. There are many American cases to the point, as that of
 
 Fenwick
 
 v. Reed: They may be found collected in 2 Philips Ev. 365. 5 c. Amer. ed. The judge, we think, mistook the class of presumptions to which this case belonged" It was only evidence to aid in raising a presumption of a fact, in the ascertainment of which, the judge could not say it was their
 
 duty
 
 to presume the existence of the feet. In the case of
 
 Fenwick
 
 v.
 
 Reed,
 
 the jury found for the plaintiffs against forty-eight years possession by the
 
 Reed
 
 family, and the court refused to disturb the verdict. There must be a new trial.
 

 Per Curiam, New trial awarded.