JAMES WILSON v. JEFFERSON JAMES.

*Landlord and Tenant—Contract—Estoppel.*

1. One, at the time under a disability to contract, who enters upon land by permission of another claiming and acknowledged to be the owner, must return the possession to such owner as a condition precedent to denying his title.

2. Where, in an action under the Landlord and Tenant Act, it appeared that the defendant, a slave, in 1863 entered into possession of

the *locus in quo* as the tenant of plaintiff, and in 1865 refused to pay further rent and disclaimed being the plaintiff's tenant ; *It was held*, that he was estopped to deny the plaintiff's title, and that plaintiff was entitled to recover.

(*Skinner* v. *Maxwell*, 66 N. C. 45 ; *King* v. *Murray*, 6 Ire. 62 ; *Bufferlow* v. *Newson*, 1 Dev. 208 ; *Gorham* v. *Brenon*, 2 Dev. 174, cited and approved.)

PROCEEDING, under the landlord and tenant act, commenced before a Justice of the Peace, and heard on appeal at Spring Term, 1878, of NEW HANOVER Superior Court, before *Eure, J.*

In 1863, the plaintiff purchased from one Bettencourt, the land now sought to be recovered, which is a lot in the city of Wilmington. At his purchase, the defendant, then a slave, was living on the lot ; whether he was the slave of Bettencourt, or of some one else, and under whose permission he was living on the lot, do not appear. The defendant applied to the plaintff to rent the premises; plaintiff did not rent them to the defendant, who continued in possession and paid rent until the entry of the Federal army into Wilmington in February, 1865, when he refused to make any further payment, and disclaimed being the tenant of the plaintiff. This action is to recover the possession of the land.

The defendant contended that inasmuch as he was a slave in 1863, when he attorned and paid rent to the plaintiff, and was incapable in law of making any contract, he is not estopped by such acknowledgment of the plaintiff's title from now denying it, and putting him to the proof of it. Ilis Honor did not assent to this proposition, but charged the jury that it was only for them to consider whether the defendant had been shown to be the tenant of plaintiff, and that it made no difference whether defendant was a slave or not, and that they must disregard that question altogether. Under the instructions given, the jury found for the plaintiff. Judgment. Appeal by defendant.

*Messrs. W. S. & D. J. Devane*, for plaintiff.
*Mr. D. L. Russell*, for defendant.

RODMAN, J. (After stating the case as above ) The doctrine of estoppel as applied between landlord and tenant, does not arise so conclusively out of a contract, that it can not be applied to one who is incapable of binding himself by a contract. If one enter upon land by permission of another, claiming and acknowledged to be the owner, the duty to return the possession to the owner as a condition precedent to denying his title, is one which the law imposes upon principles of good faith and to prevent fraud. Its violation is essentially a tort and a fraud. The same rule applies between a bailor and bailee of goods ; the latter can not, except under peculiar and exceptional circumstances, set up the right of a third party against the bailor, but must return the possession of the goods, and put the bailor *in statu quo*. This doctrine has received frequent illustration in the case of infants. Kent, 2, vol. 240, says: "Infancy is not permitted to protect fraudulent acts, and therefore if an infant take an estate and agree to pay rent, he can not protect himself from the rent by pretence of infancy, after enjoying the estate, when of age. If he receive rents, he can not demand them again when of age, according to the doctrine as now understood. If an infant pay money on his contract and enjoy the benefit of it, and then avoid it when he comes of age, he can not recover back the consideration paid. On the other hand, if he avoid an executed contract when he comes of age, on the ground of infancy, he must restore the consideration which he had received. The privilege of infancy is to be used as a shield, and not as a sword." These general principles are clearly just and reasonable, and are fully supported by the authorities cited in the notes to Kent, to which I add *Skinner* v. *Maxwell*, 66 N. C., 45.

It can not be doubted that an infant lessee of land, or bailee of goods, notwithstanding he may avoid the contract, so far as to escape the payment of rent or hire, is yet bound to return the land or goods to the person from whom he received them. To enter upon land or to receive the possession of goods by permission, and upon a contract express or implied to restore the possession, creates a relation between the parties upon which the law declares their rights and duties; and although the contract out of which the relation arose may be void or voidable, yet the relation exists as a fact with its duties and obligations, and can only be put an end to by the restoration of the parties to their *statu quo*.

In *King* v. *Murray*, 6 Ire., 62, where it was contended that the lease, under which the defendant had entered, was void for usury, the Court said that was not material; he was still estopped to deny the title of the person under whom he entered. It is on the same principle that privies in estate with the tenant, but who have themselves made no contract at all, are estopped; as in the case of a widow who continues the possession of her husband. *Bufferlow* v. *Newsom*, 1 Dev., 208; 2 Dev:, 174.

Because the defendant could not contract while a slave, is no reason why he should be allowed to commit a fraud since he is free. If the defendant be not estopped, and can put the plaintiff to proof of his title against the world, as he could do if his possession in the beginning had been adverse instead of permissive, every slave who at his emancipation was in the occupation of a dwelling on the land of his owner, and who refused after emancipation to give up his possession, might in like manner put his former master, under whose authority his occupation began, to proof of his title; and in case he could not make out a title against all the world, might hold the land.

Besides, the proposition that a slave was incapable of

making any contract, is too broad. The *executed* contracts of a slave were not void, although perhaps voidable at the pleasure of his owner. We all know that every slave had his "*peculium,*" his money and goods, which, although in the theory of the law, the property of his owner, yet were in fact his, and dealt with at his pleasure, except in the case of certain sorts of goods, the ownership of which by a slave, even with the consent of his owner, was specially forbidden by statute on grounds of public policy.

If a merchant in 1860 had sold and delivered to a slave a pair of shoes and received the price, could the merchant lawfully have taken back the shoes without returning the price? or could the owner of the slave have recovered the money from the merchant without returning the shoes? If an executed contract be disaffirmed by a party under a disability to contract, he must in general put the other party *in statu quo*; and this is not by force of the invalid contract, or from any implied contract between the parties which would be equally invalid, but because equity imposes a duty, the breach of which is a fraud, and no one can avail himself of a disability to contract to protect himself in a fraud. There are rules of right and justice which are binding on all human beings and which the law imposes on all for the general good.

In this case no damages are claimed for use and occupation since the emancipation of the defendant, but only the possession of the land. There is no error in the judgment below, and it is affirmed.

No error.                                              Affirmed.