# Davis *et al. v.* Williams *et al.*

## Bill in Equity to compel Specific Performance of Contract.

1. *Landlord and tenant; when relation not extended by occupancy of house.*—Where a person is employed by the owners of land to superintend the land and look after the business of the owner, and while in such employment he occupies a house which is situated upon said land, his occupancy of the house does not create the relation of landlord and tenant between him and the owner.

2. *Same; tenant can not dispute title of landlord.*—A tenant while occupying the leased premises is estopped from denying the title of the landlord, and before he can assert a title to the rented premises in himself or in any one in hostility to his landlord, he must surrender the possession of the premises.

3. *Same; same; estoppel must be asserted in equity.*—Where one who is occupying leased premises as the tenant of the owner, files a bill in equity to enforce alleged rights which he asserts to said leased premises, the estoppel whereby a tenant in possession is prevented from disputing the title of his landlord can be set up in a court of equity to prevent the maintenance of such suit.

4. *Same; same; bill for specific performance of contract of sale.* Where after the execution of a contract of sale of land, the

[Davis *et al.* v. Williams *et al.*]

purchaser leases the lands contracted to be sold and goes into possession thereof as the tenant of the vendor, he can not, while remaining in possession as such tenant, maintain a bill against his landlord who was the vendor, to compel the specific performance of a contract for the sale of said lands.

5. *Specific performance; when bill filed by several complainants all must be entitled to relief to authorize decree.*—Where a bill to compel the specific performance of a contract is filed by several persons as joint owners of said contract, and the enforcement of it is sought by them jointly, all of the complainants must be entitled to relief or no relief will be granted.

APPEAL from the Chancery Court of Macon.

Heard before the Hon. WILLIAM L. PARKS.

The bill in this case was filed on February 11, 1897, by the appellees, J. L. Williams and George E. Salter, against the appellants, Mary C. Davis and Hubert T. Davis. The bill was filed to compel the specific performance of a contract, which was made by R. T. Davis and Mary C. Davis with the Georgia & Alabama Construction Company, by which contract R. T. Davis and Mary C. Davis, his wife, agreed upon certain conditions to convey to the Georgia & Alabama Construction Company one-half interest in forty acres of land in Macon county. The conditions of this contract, as stated in the opinion, were fullfilled, and the contract was assigned by the Georgia & Alabama Constuction Company to the complainants. After the execution of the contract R. T. Davis died, and the title to the lands vested in his wife, Mary C. Davis, and Hubert T. Davis and Fort Davis, his children, who survived him. Mary C. Davis purchased the interest of Fort Davis, and at the time of the filing of the present bill she and Hubert T. Davis owned the lands as tenants in common. The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

On the submission of the cause on the pleadings and proof the chancellor rendered a decree granting the relief prayed for and directed the defendants to execute and deliver to the complainants a deed to a one-half

interest in the lands in dispute. From this decree the respondent appeals, and assigns the rendition thereof as error.

W. W. Pearson, for appellant.

Watts, Troy & Caffey, *contra.*—The doctrine of estoppel of a tenant in possession to deny the title of his landlord has no application to suits in which the tenant seeks specifically to enforce a contract with the landlord to convey, because it does not involve a denial of title at the time the relation of landlord and tenant was created.—*Pope v. Harkins,* 16 Ala. 323-4; *Dobson v. Culpepper,* 23 Gratt. 352; *Otis v. McMillan,* 70 Ala. 52; *Randolph v. Carlton,* 8 Ala. 614-16; *Farriss v. Houston,* 74 Ala. 168.

TYSON, J.—The bill in this case was filed by complainants, as owners of a certain contract by assignment, against the respondents, as successors in interest and title to the lands agreed to be conveyed, and seeks a specific performance of that contract. The contract was executed by R. T. Davis and Mary C. Davis, his wife, in which they agreed to convey by warranty deed a half interest in forty acres of land to be selected by the complainants' assignors in a certain section owned by R. T. Davis. The consideration of this contract was that the complainants' assignors were to build the Savannah, Americus and Montgomery Railroad within one-half mile of the residence of the Davises and to erect a depot within the same distance from their residence, at any point along the line of the road most suitable to themselves. The deed was to be executed as soon as the road was built, the depot established and a train made a trip to Montgomery. The land agreed to be conveyed, upon compliance with the conditions of the contract, and selected, was a part of a tract of land owned by him comprising about eight hundred acres.

R. T. Davis died shortly after entering into the contract and after the selection of the land was made by

complainants' assignors under it. He left surviving him
his wife and two sons. His wife, who is one of the re-
spondents, was, at the date of the filing of the bill, the
owner of a two-thirds undivided interest in the entire
tract, and Hubert T. Davis, a son, the other respondent,
was the owner of the remainder.

The evidence shows without dispute that the road
was built, the depot established, a train ran through to
Montgomery and the land selected during the year 1891.
In other words, complainants' assignors had performed
their obligation under the contract and were entitled
to a deed from the respondents during the year 1891.
On April 20th, 1896, the complainants by purchase be-
came the owners of this contract, and by virtue of that
ownership were entitled to a deed from the respondents.

One of the defenses invoked by the answer of the re-
spondents is, that complainant Williams for a period
of about two years before the filing of this bill, at the
date of its filing and for one year subsequent thereto,
tenanted and dwelt on a part of the lands in contro-
versy. It appears from the evidence that Williams, in
1892, built a house for the respondents upon the land
in controversy, which he occupied while "looking after
business" for them, until December, 1896, from which
last named date he paid rent for this house at the rate
of five dollars per month for one year, and four dollars
per month for eight months, ceasing to pay rent in
August, 1898. The bill was filed on the 11th of Feb-
ruary, 1897. It will be noted that when this bill was filed,
and after the complainant Williams had become the
owner of the contract, and after he became entitled to
a deed to the lands from the respondents, that he rented
a part of the lands and become the tenant of
one of the respondents. His occupancy of the
house which is situated upon the lands in con-
troversy, for looking after the business of the
respondents, prior to December 9, 1896, when he com-
menced to pay rent therefor, did not create the rela-
tion of landlord and tenant. That relation was simply
that of employer and employe, or master and servant,
and the occupancy of the house was a part merely of
the contract for service, and operated as a portion of

the consideration of that agreement.—The *People v. Annis,* 45 Barb. 304; *Wilber v. Sisson,* 53 Barb. 258; *Harwood v. Miller,* 3 Hill, 90; *Kerrains v. The People,* 60 N. Y. 221; *Doyle v. Gibbs,* 6 Lans. 180; *Bowman v. Bradley,* 151 Pa. St. 351; *McQuade v. Emmons,* 38 N. J. L. 397; *School District v. Batsche,* 106 Mich. 330; *East Norway, etc., Church v. Fraislie,* 37 Minn. 447; *White v. Bayley,* 10 C. B. (N. S.) 227.

The relation of landlord and tenant arose in December, 1896, which, as we have shown, was after Williams became entitled to a deed from the respondents to the land. We have the question presented as to whether Williams, being the tenant of one of the respondents at the time of the filing of the bill, and being the owner of the contract at the time he entered into that relation, can maintain the bill to require a specific performance of that contract. There is not an intimation that there was any understanding or agreement that his rental contract was subject to his right to have the contract of purchase of which he was part owner, enforced, or that his landlord ever at any time, in any way, recognized his rights under that contract, or obligation under it to make a deed to him. It is a principle universally recognized and enforced by courts of law, that a tenant is estopped to dispute the title of his landlord, unless his landlord's title has expired or been extinguished either by operation of law, or his own act, after the creation of the tenancy. It is only when there is a change in the condition of the landlord's title for the worse, after tenant enters into his contract, in the absence of fraud or mistake of fact, that he is permitted to show the change in the condition of the title. Under no circumstances, when there is no fraud or mistake of fact, will he be permitted to deny the title of the landlord at the beginning of his term. This doctrine has been enforced by this court from its earliest history.—*Randolph v. Carlton,* 8 Ala. 606; *Pope v. Harkins,* 16 Ala. 321; *Rogers v. Boynton,* 57 Ala. 507; *Farris v. Houston,* 74 Ala. 162; *Robinson v. Holt,* 90 Ala. 115; *Barlow v. Dahm,* 97 Ala. 415; *Pugh v. Davis,* 103 Ala. 316. In 2 McAdam

on Landlord and Tenant, pp. 1431 *et seq.,* this doctrine is stated in this language: "For reasons of public policy a tenant is never allowed to dispute his landlord's title after having accepted possession under him. This rule is elementary. The estoppel extends equally to landlord and tenant; so that while the tenant is estopped from denying the landlord's title, the landlord cannot allege that he had no title at the time of the demise. Where a tenant enters into possession under a lease, he is estopped from denying the title of his landlord. The tenant must surrender the possession to the landlord before he can assail or question the title under which he entered. * * * He can no more show that the premises belonged to the State than he can that they belonged to himself; he must first restore the possession which he obtained from his landlord, and then, as plaintiff, he may avail himself of any title which he has been or may be able to acquire. The foundation of the estoppel is the fact of the one obtaining possession and enjoying possession by the permission of the other. And so long as one has this enjoyment he is prevented by this rule of law from turning round and saying his landlord has no right or title to keep him in possession. * * * No dispute as to the title will be tolerated until the parties are placed in their original position. * * * Nor can he be heard to deny the title of his landlord, nor can he rid himself of such relation, without a complete surrender of the possession of the land. To allow him to agree and profess to hold possession under one as landlord, and at the same time to hold covertly for himself, or for another's advantage, would be to encourage and uphold a gross fraud, which the law will never do." Continuing, the author says: "He must first surrender up the premises to his landlord *before assuming an attitude of hostility to the title or claim of title of the latter."*

It may be urged that this proceeding is in equity and that the suit involves no denial by Williams of his landlord's title. We apprehend that it is of no consequence in what court this question of estoppel may arise. If it exists, there is no reason why it should not be enforced by courts of equity as well as by courts of law. Indeed,

such a distinction has never been asserted or recognized. In the case of *Barlow v. Dahm,* 97 Ala. 414, which was a bill for sale of land for partition by a tenant against his landlord, it was held that the tenant could not maintain the bill without first surrendering the possession. And in *Davis v. Pou,* 108 Ala. 443, which was a bill by a tenant to enjoin a writ of possession and execution at law issued upon a judgment in unlawful detainer in favor of his landlord, it was held that there was no equity in the bill for the reason that the tenant could not be permitted to show that his landlord's title had terminated before the beginning of the tenancy. In *Homan v. Moore,* 2 Eng. Exch. Rep. (4 Price), 10, it was held: "A lessee proceeded against by ejectment, and who has received notice from a claimant disputing his landlord's title not to pay him any more rent; and has been threatened with distress by his landlord if he does not, cannot sustain an injunction in equity to restrain either the ejectment or distress, for he is not permitted by such means to bring his landlord's title into dispute." In *Smith v. Target,* 2 Anstr. 529, it was held, that a tenant, though threatened with suits at law on a title adverse to his landlord's, cannot make them interplead. Said the court: "It would be extremely mischievous, if he were allowed, in his own right, or that of others, to call in question the title of the person under whom he holds." To the same effect is *Johnson v. Atkinson,* 3 Anstr. 798. In these cases, the tenant entered upon his lease after the termination of his landlord's title. The exception, however, was recognized by the chancery courts of England as exists in courts of law, that where the landlord has, by his own act, given title to another subsequent to the lease, he may thereby entangle the tenant in embarrassment, which a bill of interpleader may be the most proper mode of quieting.—*Cowtan v. Williams,* 9 Vesey, 107; *Clarke v. Byne,* 13 Vesey, 386.

This brings us to a consideration of the question as to whether the assertion by the complainant Williams of his right to have his contract of purchase specifically enforced, involves a denial of his landlord's title. At the threshold of the discussion of this question, it is necessary to ascertain the relation of the complainants to the

respondents with respect to the interest in the lands and in the contract of sale involved in this controversy. That it is a contract of sale and establishes the relation of vendor and vendee between the parties, does not admit of disputation. Assuming this as true, "in law, the contract is wholly in every particular executory, and produces no effect upon the respective estates and titles of the parties. The vendor remains *to all intents* the owner of the land; he can convey it free from any *legal* claim or incumbrance; he can devise it; on his death, intestate, it descends to his heirs; the contract in no manner interferes with his legal right to, and estate in the land; and he is simply subjected to the *legal* duty of performing the contract, or paying such damages as a jury should award. On the other hand, the vendee acquires no interest whatever in the land; his right is a mere thing in action; and his duty is a debt—an obligation—to pay the price; and on his death both this right and this duty pass to his personal representatives, and not to his heirs; in short, he obtains at law no real property or interest in real property; the relations between the two parties are wholly *personal*. No change is made until, by the execution and delivery of a deed of conveyance, the estate in the land passes to the vendee. Equity views all these relations from a very different standpoint. In some respects, for some purposes, the contract is executory in equity as well as at law; but so far as the interest or estate in the land of the two parties is concerned, it is regarded as executed, and as operating to transfer the estate from the vendor and to vest it in the vendee. This theory must of necessity make a great difference in the respective rights, duties, and relations of the vendor and vendee. One of the grand principles of equity—one of the great foundation-stones upon which the whole superstructure of particular doctrines and rules is erected—is the proposition: Equity regards and treats as done what, in good conscience, ought to be done. This principle, so brief in its statement, is most broad in its application, and fruitful in its results; from it as the root, springs a large part of the rules which make up the body of equitable jurisprudence. Apply the principle to the present case.

By the terms of the contract, the land ought to be conveyed to the vendee, and the purchase money ought to be transferred to the vendor; equity, therefore, regards these as done—the vendee as having acquired the property in the land, and the vendor as having acquired the property in the price. The vendee is looked upon and treated as owner of the land; an equitable estate has vested in him commensurate with that provided for by the contract, whether in fee, for life, or for years; although the vendor remains owner of the legal estate, he holds it as a trustee for the vendee, to whom all the beneficial interest has passed."—Pomeroy on Contracts, § 314. See also *Ashurst v. Peck,* 101 Ala. 499.

The foregoing extract clearly defines and fixes the status of Williams and one of the respondents, after he became part owner of the contract, which status necessarily existed at the time of the filing of the bill and continued up to the present time.    It is only upon the theory of the existence of this status that he can have relief upon the bill, and of necessity the prosecution of the suit for the specific performance of the contract is an assertion by him that at the time of the filing of the bill he was the owner of the land.    This assertion he cannot be permitted to make until he surrenders the premises to his landlord, since it puts him in a position of repudiating or of ridding himself of the relation of tenant which he bore to one of the respondents when the bill was filed, or of assuming an attitude of hostility to the title or claim of title of his landlord.    "A landlord can only be required to litigate title with the tenant upon the vantage ground of possession."—*Barlow v. Dahm, supra.*    Surely it will not be controverted that the bill involves a litigation of title between Williams, the tenant, and Mrs. Davis, his landlord.    For as we have said, Williams asserts by the bill his ownership of the land which is denied by the respondent, Mrs. Davis.

It is argued on the authority of *Bogan v. Daughdrill,* 51 Ala. 312, that this court can correct the decree of the lower court and grant relief to complainants, if entitled to it, for the portion of the land not in the possession of Williams, at the date of the filing of the bill, as tenant.    Assuming that complainants are entitled to that

relief, without deciding it, the record furnishes no sufficient data upon which to predicate such a decree. It fails to disclose with any degree of accuracy the area of the parcel in the possession of Williams. To undertake to eliminate it out of the land and to render a decree requiring the respondents to execute a deed for the balance, would, at best, be but a conjecture as to the area or boundaries of the land decreed to be conveyed. The ownership of the contract being joint and the enforcement of it being sought jointly, the familiar doctrine, that both complainants must be entitled to relief or neither can have it, applies. Williams not being entitled to relief, the bill must be dismissed.—*Wilkins v. Judge*, 14 Ala. 135; *Moore v. Moore*, 17 Ala. 631; *Tucker v. Holley*, 20 Ala. 426; *Plunkett v. Kelly*, 22 Ala. 655; *Plant v. Voeglin*, 30 Ala. 160; *Vaughn v. Lovejoy*, 34 Ala. 437; *James v. James*, 55 Ala. 525; *Larkin v. Mason*, 71 Ala. 231; 3 Brick. Dig. 373, § 87.

This dismissal will not preclude the rights of complainants to file another bill, if they are so advised.

Reversed and rendered.

SHARPE and DOWDELL, JJ., *dissenting*.