## J. H. LeROY v. PASQUOTANK AND NORTH RIVER STEAMBOAT COMPANY ET AL.

(Filed 25 February, 1914.)

### 1. Estoppel—Subclaimants—Possession.

One claiming possession of the *locus in quo* under the title of another cannot dispute the title of such other person until the possession so obtained is fully surrendered, and this applies to leases, licenses, contracts of purchase, or any other transaction by which possession of property is acquired from another upon an acknowledgment, express or implied, that he is the owner; and where a defendant corporation claims the *locus in quo* and its possession as successor to a corporation of which the plaintiff was an officer, and the jury has found upon a controlling issue as to title that the property had been bought and paid for by the plaintiff in his own right, and not that of his corporation, the defendant will not be permitted to dispute the plaintiff's title, for whatever right of possession it may have was derived thereunder.

### 2. Estoppel—Judgments—Parties—Privies—Corporations—Officers.

To constitute an estoppel by judgment, there must be an identity of parties as well as of the subject-matter, or the person sought to be estopped must be in privity with the parties, and where a corporation is a party to an action wherein a judgment has been rendered, an officer thereof is not as such alone in privity with the corporation so as to be estopped by the judgment therein rendered, for the action as to him is *res inter alios acta*.

### 3. Estoppel in Pais—Officers of Corporations—Affidavits—Constructive Notice—Misled to Prejudice.

The plaintiff bought and paid for a steamboat landing which is claimed by the defendant as successor to a corporation of which the plaintiff was an officer at the time and which continued in possession of the *locus in quo*. The plaintiff had charge, as such officer, of an action brought by his company, claiming the ownership of the wharf, against a third party, who claimed the wharf to be a public one, and, therefore, that he had a right to its use. The plaintiff inadvertently filed a complaint alleging ownership in his corporation, and thereafter, and before the defendant had acquired any rights, filed an affidavit in the cause correcting the mistake and alleging ownership in himself:

*Held*, that even if the defendant did not have constructive notice of the last affidavit filed in the former action, it having been found by the jury that the defendant was not misled to its prejudice by plaintiff's alleged conduct, the doctrine of equitable estoppel ·does not apply as against the plaintiff. The elements of estoppel *in pais* discussed and applied by WALKER, J.

APPEAL by defendants from *Bragaw, J.,* at October Special Term of CURRITUCK.

This action was brought to recover the possession of two wharves or piers, one at Newbern's landing, and the other at Maud's, and damages for the trespass in taking possession of the same. The jury, upon issues submitted to them by the court, found for the plaintiff as to the Newbern pier, and for the defendant as to the other. The evidence is voluminous, but we need only refer to the substance of it. Plaintiff's claim to the wharves is based on deeds made to him, J. H. LeRoy, by W. S. Newbern, Sr., and Thomas E. Newbern, for the privilege of constructing and using the wharves in connection with the navigation of the adjacent waters by steamboats. The Newberns were the occupants of the adjoining lands, and claimed the water rights as riparian proprietors.

The pleadings of the parties, the evidence, and charge of the court, show that the question in dispute was whether the wharves were built by and for the use of the Virginia-Carolina Inland Steamship Company, which was succeeded by the LeRoy Steamboat Company, by a change in the name of the former company, both companies being corporations of this State, or whether the plaintiff built them for himself and paid for the same. If they were built by the plaintiff and for himself, and·not the Virginia-Carolina Steamship Company, then that company and its successor, the LeRoy Steamboat Company, were in possession of the wharves under the plaintiff.

The jury, under the evidence and the charge of the court, found that plaintiff had built the wharf at Newbern's landing for himself and paid for the same, but that the wharf at Maud's landing was built by the LeRoy Steamboat Company.

Defendant, however, alleged that a suit had formerly been brought by the LeRoy Steamboat Company against the Farmers and Merchants North Carolina Line, in which the LeRoy Company alleged its ownership of the Newbern wharf and the said defendant denied it, so that an issue was made up, involving the title to the wharf, and tried before the court and a jury. The verdict and judgment were for the plaintiff, the LeRoy Steamboat Company. In this connection, defendant in this case alleged that the plaintiff was an officer of the LeRoy Steamboat Company; that he managed the said case in behalf of the LeRoy Company, verified the complaint himself, and, in addition, made affidavits alleging that the LeRoy Steamboat Company was, at that time, the owner of the Newbern wharf, and that he thereby was estopped to deny the ownership of that company as against this defendant, his conduct making him, in law and constructively, a party to that suit; and therefore concluded by the judgment therein.

The plaintiff denied the legal deduction from the facts alleged, and further alleged that when he signed and verified the papers, which were drawn by counsel, he was not aware of the statement in them that the LeRoy Company owned the wharf. That the title or ownership of that company was not actually or legally involved in that suit, but, as he thought and as was the fact, the LeRoy Company was relying merely upon the right acquired from him to the possession and use of the wharf, and the defendant therein, admitting the possession of the LeRoy Company, averred simply that the wharf was a public one, and being such, it had the right to use the same for the purpose of landing and docking its vessels there; that the action was for a trespass, based upon possession of the LeRoy Company, and it prayed for an injunction forbidding the Farmers and Merchants North Carolina Line from using the wharf.

The defendant in this action further alleged that plaintiff, J. H. LeRoy, is equitably estopped to deny its right or title to the wharf, by reason of the fact that it was misled by the acts and conduct of the plaintiff LeRoy in connection with the management and prosecution of that case, and especially by the

papers filed therein and verified by him, in which the owner-
ship of its assignor, the LeRoy Steamboat Company, was ex-
pressly alleged; that said statements were knowingly made by
J. H. LeRoy, were calculated to mislead a purchaser from the
LeRoy Company of the property described in the pleadings and
other papers in the cause, and did actually mislead it, and to
permit him now to allege the contrary would greatly prejudice
the defendant.

Plaintiff replies that the question of title to, or ownership of,
the wharf was not in controversy between him and the LeRoy
Company in that suit, but only the possession of the LeRoy
Company, which was sufficient to support its cause of action,
and that after the papers, which had been verified by him, were
filed, he made an affidavit in the said case, which was also filed
in the record, in the following words: "By virtue of an agree-
ment between this affiant and the plaintiff company, the plain-
tiff company is using the wharf or pier at Newbern's landing
known as the LeRoy wharf or pier, situate on the lands con-
veyed by W. S. Newbern to this affiant, and described in the
complaint as being owned and in possession of the plaintiff
company." This affidavit was dated and filed with the other
papers in the cause on 5 June, 1909, one month after the filing
of the complaint, and more than two years before the defendant,
Pasquotank and North River Steamboat Company, acquired its
alleged right or title from the LeRoy Steamboat Company by
deed of the latter date, and that defendant was fully informed
thereby of the true relation between the LeRoy Company and
this plaintiff with respect to the ownership of the property, and
that if the defendant purchased the property from the LeRoy
Steamboat Company in reliance upon any previous statement
by him in said case, or any acts or conduct of his in connection
therewith, it did so in its own wrong, and that plaintiff, there-
fore, is in no way estopped now to assert title to, or ownership
of, the property as against it.

Much testimony was introduced by the respective parties to
support these various contentions. The jury returned the fol-
lowing verdict:

1. Is the plaintiff the owner of the wharf at Newbern's land-ing and entitled to possession of same? Answer: Yes.

2. Does the defendant unlawfully exclude the plaintiff from the possession thereof? Answer: Yes.

3. What damage is plaintiff entitled to recover therefor? Answer: $200 per year.

4. Is the plaintiff the owner of the wharf at Maud's, and entitled to possession of same? Answer: No.

Judgment was entered thereon, and defendant appealed, after reserving exceptions.

*J. Kenyon Wilson and Ward & Thompson for plaintiff.*
*Ehringhaus & Small for defendant.*

Walker, J., after stating the case: The jury having found, under proper instructions from the court, that plaintiff constructed the Newbern wharf and himself paid for the same, and that the LeRoy Steamboat Company, or its predecessor, did not pay for it, this being the main question in dispute, it follows that the LeRoy Steamboat Company was in possession under license or permission of plaintiff, and as defendant claims under the said steamboat company, it is not in a position to dispute the plaintiff's right to the property, unless its other defenses are good and valid in law, for it cannot deny plaintiff's title, under such circumstances, as mediately through its assignor it acquired the possession from him. The principle applies to leases, licenses, contracts of purchase, or any other transaction by which possession of property is acquired from another upon an acknowledgment, express or implied, that he is the owner, and the title cannot be disputed until the possession so obtained is fully surrendered, it being a rule founded on a principle of honesty, which does not allow possession to be retained in violation of that faith on which it was acquired or continued, as said by *Justice Dillard* in *Farmer v. Pickens,* 83 N. C., 549. The doctrine is well supported by that case and the following: *Hartzog v. Hubbard,* 19 N. C., 241; *Love v. Edmonston,* 23 N. C., 152; *Springs v. Schenck,* 99 N. C., 551; *Stewart v. Keener,* 131 N. C., 486, and *Campbell v. Everhart,*

165—8

.139 N. C., 503, where the principle is fully discussed and the authorities collated. The rule applies as well to the assignee or undertenant of the person who has thus acquired the possession of the property, and to the same extent, as it does to his assignor. *Stewart v. Keener, supra,* and *Campbell v. Everhart, supra,* and cases cited on this point.

There are other reasons for holding the plaintiff to be entitled to the possession of the wharf, unless he has been estopped or his right barred as alleged by the defendant. This is said to have been done in two ways:

First. That plaintiff's conduct in connection with the suit of the LeRoy Steamboat Company against the Farmers and Merchants North Carolina Line makes him constructively a party thereto, and estops him to deny the title of the LeRoy Steamboat Company. It is true that a judgment is an estoppel upon parties and privies; but to constitute a judgment an estoppel, there must be an identity of the parties as well as of the subject-matter; that is, it is necessary that the parties, as between whom the judgment is claimed to be an estoppel, should have been parties to the action in which it is rendered, or else be in privity with the parties in such former action, and, as a general rule, it is conclusive only between them. 23 Cyc., 1237; 24 A. and E. Enc. of Law (2 Ed.), 724; *Armfield v. Moore,* 44 N. C., 157; *Owens v. Alexander,* 78 N. C., 1; *Wood v. Sugg,* 91 N. C., 93; *Dickens v. Long,* 109 N. C., 165. Every estoppel must be reciprocal, that is, it must bind both parties, since a stranger can neither take advantage of an estoppel nor be bound by it. Co. Lit., 352 a; Taylor Ev., 586; *Peebles v. Pate,* 90 N. C., 348; *Allred v. Smith,* 135 N. C., 443. The bar, therefore, must be mutual to the parties in the later action.

Under this definition of an estoppel of record and the scope of its operation upon parties and privies with respect to the subject-matter in litigation, there is no reason for holding the plaintiff bound by the judgment in the suit between him and the other company. This Court said in *Falls v. Gamble,* 66 N. C., 455: "No estoppel of record is created against one not a party to the record, even though he had instigated the tres-

pass on account of which the action was brought, aided in the
defense of the action, employed counsel, introduced his deeds in
evidence, and paid the costs, and though he and the present de-
fendant claimed by deeds under the present trespasser." Speak-
ing of this principle, now asserted by the defendant, *Chief Jus-
tice Pearson,* in *Falls v. Gamble,* thus examines and repudiates
it: "The defendant says, true, Falls is not a privy of record,
but he instigated Orpe to commit the trespass, aided in the de-
fense of the action, employed counsel and paid the costs, and
Orpe read the title deed of Falls in evidence on the trial. Take
all this to be so: how can these matters *dehors* constitute him a
party or a privy so as to work an estoppel of record? If this
be so, Falls would lose his title, not by record or by deed, but
by parol evidence, a thing never before heard of except in one
case, *Kennersly v. Orpe,* 2 Douglass, 517, on which case *Lord
Ellenborough* comments in this wise in *Outram v. Moorewood,*
3 East, 366: 'As to the case of *Kennersly v. Orpe,* it is ex-
traordinary that it ever should for a moment have been sup-
posed that there could be an estoppel in such a case.' " He also
adds that "Falls was not a party to the action, although con-
ducting it outside, could not be recognized by the court, and had
no right of appeal." But we need not invoke the authority of
that case, although it has been often cited by this Court, seem-
ingly with approval.

The plaintiff did nothing which, in law, should bind him as
a party to the record in that case, and certainly nothing that
prejudiced the defendant by the verdict and judgment rendered.
Besides, as to this defendant, it was *inter alios acta.* The con-
troversy was with the Merchants and Farmers North Carolina
Line, and not with it; nor was it a party or privy to the suit,
or in any degree bound by the judgment therein.

Under the principle that estoppels must be mutual and bind
only parties and privies, and that one who is not bound by an
estoppel cannot take advantage of it, the conclusion is inevita-
ble that defendant cannot rely upon the record in that case, nor
upon the conduct of the plaintiff as working an estoppel against
him.

We find it stated in Starkie on Ev., 332, that "When parties are not the same, one who would not have been prejudiced by the verdict cannot afterwards make use of it, for between him and a party to such verdict the matter is *res nova,* although the title turn upon the same point." But the titles relied on in the two cases do not turn upon the same point, and for this reason the rule, as stated by Mr. Starkie, is most strongly against the defendant. The Farmers and Merchants North Carolina Line is not a party to this suit, nor does the defendant claim under it. Considered, therefore, from any standpoint of the law, this plea of estoppel has nothing to rest upon. *Allred v. Smith, supra,* and cases cited therein.

But defendant contends, lastly, that the plaintiff is equitably estopped to set up any title to the wharf, as against it, whether the LeRoy Steamboat Company itself had title thereto or not, because it alleges that plaintiff, by verifying the complaint and filing an affidavit in the case between the LeRoy Steamboat Company and the Farmers and Merchants North Carolina Line, alleging ownership of the wharf in the LeRoy Company, deceived it and caused it to buy the property from said LeRoy Company. But plaintiff testified that this was done by inadvertence, if the allegation is equivalent to an admission by him that the LeRoy Company owned the wharf, and that he did not intend to mislead any one. The jury have found, under correct instructions from the court, presenting the question to them fully and fairly, that defendant was not misled by anything that plaintiff is alleged to have done. But the argument against defendant's contention goes far beyond this finding of the jury.

We doubt seriously if the conduct of plaintiff in respect to that suit, it being *res inter alios acta,* is, in law, such matter as was calculated to mislead the defendant, under the admitted circumstances, so as to bind plaintiff by an equitable estoppel. *Boddie v. Bond,* 154 N. C., 359. There is no sufficient evidence that he actually intended to mislead the defendant; and, again, when he discovered the nature of his former statement respecting the ownership of the wharf, which he says was drawn by counsel and inadvertently verified by him, he filed an affidavit

correcting it, and alleging therein that he, and not the LeRoy Company, was the owner of the wharf; and this was notice to the defendant, as much so as the other papers in that cause. It was not necessary that the LeRoy Company should have had the entire interest or estate in the wharf in order to recover against the defendant in that case for using it without its consent. It was quite sufficient that it had the actual possession and the right thereto under J. H. LeRoy, as it was an action to vindicate such right and to enjoin the defendant from unlawfully using the wharf.

But the jury have found, as we have said, that defendant was not misled to its prejudice, and this finding completely destroys the defense, now set up, of an equitable estoppel. This we decided in *Boddie v. Bond,* 154 N. C., 359. This case is very much like that one in its general features, so far as the plea of an equitable estoppel is concerned. In the *Boddie case* we held:

"1. A party claiming title to lands only by reason of an equitable estoppel of the other party to the action, arising from his alleged acts and conduct respecting a line between adjoining lands, must show that the acts and conduct relied on have misled and caused him loss or damage.

"2. A party seeking in his action to estop another by his acts and conduct from claiming certain lands, must show that he had been misled and prejudiced in some way; otherwise, the acts and conduct relied on would not appear to cause him loss or damage."

What is more to the point, the Court said in the opinion: "The plaintiff made no assertion or statement of fact which has misled the defendant. She has simply conveyed a part of her land to Mrs. Miles and fixed the northern line or boundary as set out in her deed, without having any transaction or communication with the defendant. It is, therefore, nothing but just that she should be allowed to stand upon her right and assert her real title to the disputed land. The reference in the deed to the 'northern line' as having been agreed upon by the interested parties must be restricted in its operation to her and Mrs. Miles—the only parties to the deed—and its effect, as to the de-

fendant, is not extended beyond that produced by the other description in the deed. It works no estoppel and cannot be treated as a ratification. There is no room in this case for the contention that it amounts to either of these, so as to give the defendant any right to the land which he did not have before."

Bispham (5 Ed.), sec. 282, says of this kind of estoppel: "Equitable estoppel, or estoppel by conduct, has its foundation in the necessity of compelling the observance of good faith; because a man cannot be prevented by his conduct from asserting a previous right, unless the assertion would be an act of bad faith towards a person who had subsequently acquired the right. It is the presence of this bad faith, either in the intention of the party or by reason of the result which would be produced if he were permitted to deny the truth of his statement, that distinguishes this species of estoppel from estoppel at common law."

There should be no estoppel in equity, or any principles of equity, unless the person who asks relief from the rigor of the law is a purchaser, in the large and liberal sense of that term, which includes all who have given value, or changed their position for the worse, in reliance on the act or declaration of the other party, without knowledge or notice that the conduct or statement was not what it was represented to be. A party who has not been deceived or misled to his prejudice cannot be said, in any just or reasonable sense, to have been defrauded. Herman on Estoppel, sec. 797.

The essential elements of an equitable estoppel applicable to our case are: (1) There must be conduct—acts, language, or silence—amounting to a representation or a concealment of material facts. (2) These facts must be known to the party estopped at the time of his said conduct, or, at least, the circumstances must be such that knowledge of them is necessarily imputed to him. (3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, *and at the time when it was acted upon by him.* (4) The conduct must be done with the intention, or at least with the *expectation,* that it will be

LeRoy v. Steamboat Co.

acted upon by the other party; or under such circumstances that it is both natural and probable that it will be so acted upon. There are several species in which it is simply impossible to ascribe any *intention* or even *expectation* to the party estopped, that his conduct will be acted upon by the one who afterwards claims the benefit of the estoppel. (5) The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. (6) He must, in fact, act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it. 16 Cyc., 726; 2 Pomeroy's Eq. Jur., 805.

These, perhaps, embrace all of the constituent elements; but those thus stated may be subject to some explanation in special cases, as, for instance, that a man may be presumed to intend that which is the natural and probable consequence or effect of what he says or does. But even as they are stated most favorably for the defendant, its case is not brought within their operation. The jury have found that it had notice, or that it did not rely upon the statement, if it had any knowledge of it, or that it was not prejudiced thereby, if it did; and we think the verdict was fully warranted by the evidence, if there be any tending to show that defendant acted upon the alleged representation or was misled to its prejudice thereby, when it purchased from the LeRoy Company.

What was said by this Court in *Holmes v. Crowell*, 73 N. C., 613, is worthy of mention, as being quite pertinent to the facts of this case:

"In order to create an *estoppel in pais,* it must appear:

"1. That the party knew of his title.

"2. That the other or second party did not know, and relied upon the representations so made by the first party.

"3. That the second party was deceived; and some add a fourth element, that the first party *intended* to mislead him; but it is not necessary to decide it in this case (said the Court), as all the other requirements are wanting."

And so we say in our case, it is not necessary to set precise limits to the doctrine, as two, at least, of the essentials are lacking. The defendant had notice from the affidavit filed two years before he bought, as to the true ownership, and should not have been misled, and, as the jury say, was not misled; and, besides, the defendant in this case was not a party to that suit.

We have been referred by the learned counsel of defendant to *Sample v. Lumber Co.*, 150 N. C., 161, for the principle that where both parties claim from the same source of title, neither will be permitted to deny the validity of the title so derived, and the priority of title then determines the ownership as between the parties, unless he who has the later deed can show a superior outstanding title and connect himself with it. This is a rule adopted by the courts for convenience, and is binding upon the parties, and it would apply here if the jury had found that the LeRoy Steamboat Company owned the wharf, and the plaintiff claimed under it; but they found that it was built and paid for by plaintiff, and the LeRoy Steamboat Company was in possession under him; so that the case is more like *McCoy v. Lumber Co.*, 149 N. C., 1, cited and approved in *Sample v. Lumber Co., supra,* which held that when one acquired possession, or a limited interest in real property, from another, he cannot keep the possession and dispute his title. This is but the same in substance as the rule we have already stated and applied.

Counsel cited us to Pomeroy's Eq. Jur. (Ed. of 1882), secs. 803, 804, 805, and 806, for the law as to equitable estoppels. We have recited substantially all that is there stated by Dr. Pomeroy on the question. It is true that actual or intentional fraud is not a requisite element of an equitable estoppel, but there is nothing in this case upon which fraud can be imputed to plaintiff, even implied or constructive fraud, nor do we think the defendant was justified in relying upon plaintiff's conduct, under the circumstances as disclosed, if it really contained any fraudulent element. It was not intended or expected that defendant would be misled. *Mason v. Williams,* 66 N. C., 564, also cited by defendant, has no bearing on the matter, as the conduct of

the party, as shown in that case, was directly misleading to the other party, who bought the property in his presence and hearing, supposing that he was not the owner, and his silence, when he was called upon to assert his claim, if he had one, was calculated to deceive and did induce the purchase, so that it was imputedly fraudulent, if not intentionally so. He lost his property under the maxim that "A man who does not speak when he ought, shall not be heard when he desires to speak." (*Qui tacet consentire videtur.*)

If defendant would otherwise have had the right to rely upon plaintiff's conduct, the latter spoke and divulged his right to the wharf before the defendant bought. Nor is Bigelow on Estoppel, pp. 147, 148, also cited, any more in point for the position that plaintiff is bound by his conduct as constructively a party of record. It refers to cases where the party whose conduct is alleged to have that legal effect is liable over to one who is a party and has been duly notified or vouched to come in and defend, as he is bound by some former undertaking to do, as in the instance of a covenant of warranty. *Jones v. Balsley,* 154 N. C., 61.

We have considered the case somewhat at length, because each position was asserted on the one side and contested on the other with unusual zeal and ability by counsel, who have submitted to us well prepared and exhaustive briefs upon the disputed questions.

If there was any error in the other rulings, it was not material in the view we take of the case, and certainly not sufficient to justify a reversal. But we do not concede that there was any error, but, on the contrary, our conclusion is that the legal merits of the case are with the plaintiff, and the verdict and judgment are in accordance with the facts as disclosed by the evidence.

No error.