This action was brought to recover the possession of land. The plaintiff, in its complaint, alleged title in itself to a large tract of land, which the plaintiff estimated to contain something like 10,000 acres. The defendant disclaimed any interest in the land except two tracts, one containing 110 acres, and one 7 1/2 acres, in which he asserts ownership in himself, and denied the plaintiff's title. Upon coming to trial the plaintiff, with leave of the court, amended its complaint, limiting the controversy to the two tracts of 110 acres and 7 1/2 acres, to which the defendant had asserted claim of title, and upon the amended pleadings as set forth in the record the case was tried. The defendant assigned three errors (among others not deemed necessary to be now considered), as follows: The admission, over his objection, of a deed from Neill McKay and John W. McKay to the Deep River Manufacturing Company, and other *Page 336 
deeds connecting him therewith, the ground of objection being that the description of the land in the deeds was too vague and uncertain for it to be identified. It will be necessary to give only the description in the first named deed, as the others refer to it, which is as follows:
"All that tract of land situated, lying, and being in the counties of Harnett and Moore, lying on both sides old road between Summerville and Neill McNeill's land in Moore County, bounded by the lands of Neill McNeill, Esq., lands belonging to the estate of Murdock McLeod, deceased, Jas. S. Harrington, Neil McLean, Jr., the Bethea lands, Jas. M. Turner, and the lands of the estate of Noah Buchanan and others, including a part of a five thousand-acre survey and a three thousand-acre survey patented by John Gray Blount and conveyed by Wm. B. Rodman and others to Neill McKay and John W. McKay, also six hundred and forty acres patented by the said John W. McKay, also a piece patented by Jas. S. Harrington and John Harrington and Neill McNeill and Hector McNeill and others, and by them conveyed to the said Neill McKay and John W. McKay, containing by estimation ten thousand acres." The second error assigned is the admission in evidence of a written lease of the lands for the purpose of working the trees thereon for turpentine, and for this purpose only, introduced for the purpose of estopping the defendant, who claimed under said lease, to deny the plaintiff's title. The third error assigned is to the admission of a paper-writing, signed by D. G. McDuffie, civil engineer, dated 24 September, 1888, for the purpose of locating the lands described in the McKay deed aforesaid, the said paper-writing being in the following words and figures:
"This is to certify that 14 November, 1868, Rev. Neill McKay and Dr. J. W. McKay and wife sold to the Deep River Manufacturing Company 10,000 acres of land in Harnett County and Moore County as follows: 5,000 acres and 3,000 acres known as the Blount Speculation land, and 2,000 acres composed of 640 acres granted to Dr. J. W. McKay and the pieces which the McKays had bought from Neill McNeill, Hector McNeill, Jas. S. Harrington, and John Harrington, joining Neill McNeill, McLeod, Neill McLean, Jr., Bethea, J. M. Turner, and Noah Buchanan.
"I further certify that I was selected by both parties to make an actual survey of said lands, and that the Rev. Neill McKay went with me and showed me where the boundaries were, and that after making the survey I handed the plat and courses and distances to Col. J. M. Heck, and I certify that the following are the courses and distances (then follows description by metes and bounds)."
There are other exceptions and assignments of error, but, in the view taken of the case by the court they need not be set out here. *Page 337 
Defendant moved for a nonsuit, which was denied, and he excepted.
The jury returned the following verdict.
"1. Was E. J. Yarbrough, at the time she executed the deed to J. A. Yarbrough for the 110-acre tract described in the amended complaint, the tenant of the plaintiff's predecessor in title? Answer: `Yes.'
"2. Is the plaintiff the owner and entitled to the possession of the lands described in the amended complaint? Answer: `Yes.'
"3. What is the annual rental value of plaintiff's lands in the possession of the defendant? Answer: `$80.'"
Judgment on the verdict, and defendant appealed.
after stating the case as above: The description in the deed of Neill McKay and John W. McKay to the Deep River Manufacturing Company is sufficiently certain to let in parol evidence for the purpose of identifying the land. Since the decision of this Court in Patton v. Sluder,167 N.C. 500, there can be no doubt of the correctness of the proposition just stated, that the description of the land is not too vague to be aided by parol proof so as to fit it to the land intended to be conveyed. The descriptive words in the Patton case were: "On the headwaters of Swannanoa River, adjoining Hemphill and Gilliam heirs and others." Prior to the decisions in Blow v. Vaughn, 105 N.C. 198, and Wilson v. Johnson, ibid., 211, such descriptions as that appearing in the McKay deed were held not to be too vague and indefinite to be aided by parol proof. Those two cases varied the rule somewhat, but were disapproved in Perry v. Scott,109 N.C. 374. The following was the description construed in the last case: "Lying and being in the county of Jones and bounded as follows, to wit: On the south side of Trent River, adjoining the lands of Colgrove, McDaniel, and others, containing three hundred and sixty acres, more or less." This was held to be sufficiently certain to be located by parol proof.
It is true we have held that a deed conveying real estate or a contract concerning it, within the meaning of the statute of frauds, must contain a description of the land, the subject-matter of the contract, "either certain in itself or capable of being reduced to certainty by reference to something extrinsic to which the contract refers." Massey v. Belisle,24 N.C. 170. But the principle is satisfied by the descriptive words of this deed. The evidence proposed to be offered to identify the land must of course have that tendency, but we are not discussing the question *Page 338 
whether the description is sufficient in any given case, but the general one what description is, in itself, sufficiently certain to be perfected by parol testimony.
In our case we think the description is sufficient to let in parol evidence. The Revisal of 1905, secs. 948 and 1605, declares in explicit language that this shall be the law. The matter is so fully discussed inPerry v. Scott, supra, and in Patton v. Sluder, 167 N.C. 500, that further comment would be useless. While we hold that the deed is valid, there was some evidence admitted to identify the land, which we deem to be incompetent. We refer to the notes of the surveyor, D. G. McDuffie, made in September, 1888, and which are fully set forth in our statement of the case. The paper is in the handwriting of McDuffie, who is dead, and it was written by him before this controversy arose, and this action was brought, and, at the time of writing these notes, McDuffie had no interest in the land, or the subject-matter of the notes, except that he had been employed by the McKays and the Deep River Manufacturing Company to make the survey for them, but the fact remains that the surveyor McDuffie derived his knowledge of the lines and corners, upon which he based his survey, from Parson Neill McKay, and this fact appears in the notes offered in evidence by the plaintiff, for he says in the notes: "I further certify that I was selected by both parties to make an actual survey of said lands, and that the Rev. Neill McKay went with me and showed me where the boundaries were, and that after making the survey I handed the plat and courses and distances to Col. J. M. Heck, and I certify that the following are the courses and distances." It is true that in questions of boundary, hearsay is competent as evidence. But it must come from a disinterested source. The conditions under which it is received are: (1) the declaration must come from a disinterested person; (2) it must have been made ante litem motam;
and (3) the person who made it must be deceased, so that he cannot be produced and heard in person as a witness. Smith v. Headrick, 93 N.C. 210;Yow v. Hamilton, 136 N.C. 357, and cases cited. It was said bySmith, C. J., in Whitehurst v. Pettipher, 87 N.C. 179: "The declaration is received under the conditions mentioned as evidence, instead of the sworn statement for which it is substituted, when the party making it is dead and the evidence would otherwise be lost. It is manifest that if the declarant were alive, and would be allowed to prove the fact to which the declaration relates, the declaration itself may be proved after his death." In this case, if McDuffie were living, he would not be permitted, as a witness, to testify as to what Dr. McKay told him about the boundaries, because it would, of course, be hearsay, and Dr. McKay was at the time he showed him the boundaries of the land an interested person, being the owner of the land, or one of its owners. The primary *Page 339 
declaration would not have come from a disinterested source. The notes of McDuffie were written twenty years after the actual survey was made by him, and were based, it appears, entirely upon the declaration of an interested person. They constituted the declaration, not the sworn testimony, of McDuffie, as to what another man had declared, and the latter interested in the land, the boundaries of which are in question. It is the declaration of the person who knows the boundaries that is required to satisfy the rule of admission, and that is, in this case, the declaration of Dr. McKay. It is excluded because of his interest in the land, and his making a declaration favorable to himself. The declarant must be dead, because if alive he must be produced as a witness, and he must be disinterested, and the declaration must be made ante litem motam to avoid bias or to free it from suspicion, and to remove all temptation to falsify. Dobson v. Finley, 53 N.C. 495;Shaffer v. Gaynor, 117 N.C. 15; Westfelt v. Adams, 131 N.C. 379. It is admitted from necessity, because it is the best and only evidence of the fact obtainable. Mr. McDuffie was only writing into his notes substantially something that Parson McKay had told him, which is hearsay upon hearsay. The cases we have generally had are those where a living witness testified to what a deceased person had declared as to boundaries. The judge erred in admitting these notes. They were material, and their admission prejudicial, because they were used for the purpose of locating the boundaries, and were allowed, by the court, to have the effect of proof as to them, and, if competent, they would be strong proof of the lines and corners.
The third question, as to the estoppel of the defendant to deny the plaintiff's title, because of the tenancy of his predecessor, E. G. Yarborough, requires little discussion as to the facts. They must be settled by the jury. We need only to state the general principles of law governing such cases, and the applicability of the estoppel to a subtenant. It is well settled doctrine, says the Court, in Davis v. Davis, 83 N.C. 71, that one who, as tenant, gains possession of the land of another cannot resist an action for its recovery, brought after the termination of the lease, by showing a superior title in another or in himself, acquired before or after the contract. The obligation to surrender becomes absolute and indispensable. Honesty forbids, says Ruffin, C. J., that he should obtain possession with that view, or, after getting it, thus use it. Smartv. Smith, 13 N.C. 258. Neither the tenant nor any one claiming under him, remarks Daniel, J., can controvert the landlord's title. He cannot put another person in possession, but must deliver up the premises to his own landlord. Callendar v. Sherman, 27 N.C. 711. If he entered as tenant, or, after entry, had become such, is the language of Rodman, J., he was estopped from asserting his title until he had restored the possession to the plaintiff. Heyer v. Beatty, 76 N.C. 28. *Page 340 
Even a homestead right cannot be asserted in opposition to the recovery.Abbott v. Cromartie, 72 N.C. 292. The rule does not preclude the tenant from showing an equitable title in himself or such circumstances as under our former system would call for the interposition of a court of equity for his relief, and which relief may not be obtained in the action, as is held in Turner v. Lowe, 66 N.C. 413. Yet the force of the general proposition remains unimpaired, that where the simple relation of lessor and lessee exists without other complications, the latter cannot contest the title of the former. Forsythe v. Bullock, 74 N.C. 135. The obligation to restore a possession thus obtained, before an inquiry into the title is permitted, although springing from the contract, rests upon the foundation of good faith and honest dealings among men. Lawrence v. Eller, 169 N.C. 211;LeRoy v. Steamboat Co., 165 N.C. 109. This principle of estoppel is fully considered, in these two cases, and in Lawrence v. Eller, supra, this Court said that the general rule, however, as stated, while it varies at times in its application, has been everywhere recognized as sound, and has always been very rigidly enforced in this jurisdiction, citing in support of it the following authorities: Campbell v. Everhardt, 139 N.C. 502-514; Poolv. Lamb, 128 N.C. 1; Springs v. Schenck, 99 N.C. 552; Davis v. Davis,83 N.C. 71; Farmer v. Pickens, 83 N.C. 550; Wilson v. James, 79 N.C. 349;Abbott Foster v. Cromartie, 72 N.C. 292; Callender v. Sherman,27 N.C. 711; Town v. Butterfield, 97 Mass. 105;Brown v. Keller, 32 Ill. 157; Davis v. Williams,130 Ala. 530; Rodgers v. Boynton, 57 Ala. 501; Wardv. Ryan, J. R., vol. 10, 76-77, p. 17; Peyton v. Stith, 5 Peters, 485; 2 McAdam Landlord and Tenant, sec. 421; 18 A. and E. (2 ed.), p. 414; 24 Cyc., 946.
The Court held in Springs v. Schenck, supra: "A tenant cannot be heard to deny the title of his landlord, nor can he rid himself of this relation without a complete surrender of the possession of the land." It was held inTowne's case, supra: "A tenant at will is estopped from denying his landlord's title without surrendering of the leased premises or eviction by title paramount or its equivalent." The Court said in Brown v. Keller:
"That a tenant must surrender the premises before asserting rights adverse to his landlord, which he acquired after renting the premises." And inDavis v. Williams, supra, it was held as follows:
"1. A tenant is estopped to dispute the title of his landlord, unless his landlord's title has expired or been extinguished, either by operation of law or his own act, after the creation of the tenancy (p. 58).
"2. It is only where there is a change in the condition of the landlord's title for the worse, after a tenant enters into his contract, in the absence of fraud or mistake of fact, that he is permitted to show the change in the condition of the title (p. 58). *Page 341 
"3. A tenant must first surrender the premises to his landlord before assuming an attitude of hostility to the title or claim of title of the latter (p. 58).
"4. An estoppel will be enforced in a court of equity as well as in a court of law (p. 59)."
We see from this review of the subject, and the long line of cases sustaining our conception of the law, that there can no longer be any dispute as to the nature of this kind of estoppel, or as to its effect. It may also be considered as settled that any one to whom the tenant has assigned, and who has entered under him, becomes subject to the estoppel as much so as the tenant himself, and the authorities already cited are equally clear and explicit as to this proposition. Whether the case is brought under the influence of this principle depends, of course, upon the facts as found from the evidence. We will not refer to the facts, or comment upon them, as we cannot well anticipate what they will be at the next trial, when ascertained by the jury. The question of adverse possession is also postponed until the other matters are decided, as it depends upon them.
We order a new trial because of the error in regard to the notes of the surveyor, and we exercise our discretion by extending it to both tracts of land.
New trial.