\* W. G. BLOW et al. v. ROBERT VAUGHAN et al.

*Deed—Description of Land—Evidence.*

1. Where the description in a *deed* offered to show title was " fifty acres of land lying in the county of Hertford and bounded as follows: By the lands of John H. Liverman, John P. Liverman and Isaac J. Snipes": *Held*, that the language left open for explanation by parol proof only the question whether there was a tract of land in Hertford County containing fifty acres, and so bounded by the lands of the three persons named, as to separate it from other tracts and indicate its limits with reasonable certainty.

2. In the *complaint* filed the land was described as "adjoining the lands of John P. Liverman, John H. Liverman and Isaac J. Snipes, and containing fifty acres: *Held*, that the description in the complaint was too vague to be explained by parol testimony, and if the transcript was correctly copied in the complaint, the action might have been dismissed for failure to state facts sufficient to constitute a cause of action, or after the evidence was heard the jury might have been told that there was a fatal varience between the allegations and the proof.

3. A deed that contains no descriptive word or phrase sufficient, with the aid of competent extrinsic testimony, to identify and determine *all of its boundary lines*, will not pass any estate to the bargainee therein named.

---

\* Head notes by AVERY, J.

4. The test of the admissibility of evidence *dehors* the deed is involved in the question whether it tends to explain some descriptive word or expression contained in it, as to show that such phraseology, otherwise of doubtful import, contains in itself, with such explanation, an identification of the land conveyed. The rule is founded on the maxim, "*Id certum est quod certum reddi potest.*"

5. The rule that the descriptive words in the deed must, with the aid of the *evidence aliunde*, to which they *point*, identify the boundaries of the land conveyed, has been sanctioned by the Courts, not only upon the idea that there must be a certain subject-matter, but. because its observance is essential to a proper enforcement of the statute of frauds.

6. The sufficiency of descriptions in levies were made to depend, in some instances, upon the construction given by the Courts to the statute (Rev. Code, §16, ch. 62), prescribing what they should contain, and hence the Courts held descriptions in levies sufficiently definite that have been declared too vague in deeds of conveyance.

7. Proof in this case that a tract of land, containing one hundred and twenty-five acres and belonging originally to John W. Blow, from whom the ancestor of plaintiffs claimed, was completely surrounded and bounded by the lands of the three persons named in the deed, will not identify the land which the deed purports to convey, because there is no testimony to show in what part of it the fifty acres is to be laid off. (*Hinton* v. *Roach*, 95 N. C., 106, overruled.)

This was a CIVIL ACTION, brought to recover possession of, and establish title to, a tract of land, tried at Fall Term, 1889, of HERTFORD Superior Court, before *Brown, J.*

The land in controversy was described in the complaint as follows: "Adjoining the lands of John P. Liverman, John H. Liverman and Isaac J. Snipes, and containing fifty acres." In the deed offered in evidence to show title derived from John W. Blow, the common source, in Henry B. Blow (under whom plaintiffs claim by descent), the land is described as "fifty acres of land lying in the county of Hertford and bounded as follows, by the lands of John P. Liverman, John H. Liverman and Isaac J. Snipes."

J. H. Liverman testified : "The land described in the deed from John W. Blow to H. B. Blow is the same land described in the complaint. The fifty acres described in the complaint lay in a corner, and is called the Manly tract; it is not a separate piece of land. John W. Blow only owned two tracts—called the home place and the Snipes tract—said to be 125 acres, more or less. John W. Blow did not have a tract of land bounded by John P. and J. H. Liverman and Isaac J. Snipes, that I know of; I don't know whether it would touch all of them or not; don't know whether this fifty acres touched Isaac J. Snipes or not; John W. Blow's Snipes tract was bounded by all said parties. There was no separate fifty-acre tract; the fifty acres described in the complaint is a part of the Snipes tract, Major Wise being in possession thereof. This tract is called the Manly tract; it is part of the Snipes tract."

Plaintiffs rested.

Defendants offered the following evidence:

E. T. Snipes testified: " In 1869 J. W. Blow owned the home place and the Snipes land; did not own or possess any other. Snipes tract bounded, in part, by J. P. and J. H Liverman and I. J. Snipes. The fifty acres in controversy, I think, is part of the Snipes land. The said boundaries do not especially fit or designate any particular part of the Snipes tract. The lands that Henry Blow lived on, and his brother Gus, is part of the Snipes tract. There is a portion of the Snipes tract that is not bounded by John P. and John H. Liverman, or Isaac J Snipes. Henry Blow's house is in the North-west corner of the Snipes tract. The Manly tract is an old name for the land, but no particular tract is called Manly land. The residences were known by certain names. Years ago, the whole was embraced in one tract, called the Snipes tract. The Snipes tract was composed of several tracts, one of which was called the Manly tract. The fifty acres called for in the deed to Henry Blow could not be cut

off so as to be bounded by John P. and J. H. Liverman and Isaac J. Snipes "

Isaac J. Snipes testified for plaintiffs: " I owned Snipes tract. The piece in dispute was called the Manly field; don't know how much there was of it, or its boundaries; it was part of the Snipes tract; I conveyed the whole to John W. Blow. The Manly field touches John P. Liverman and my land, but don't know whether it touches John H. Liverman; known by that name."

B. F. Liverman testified for plaintiffs: " In 1870 the land in dispute adjoined John H. and John P. Liverman and Isaac J. Snipes; am certain the fifty acres conveyed to Henry Blow by his father adjoined all three of those persons, and the fifty acres can be laid off so as to adjoin all three. The land that Henry went into possession of after he got deed from his father touched the two Livermans and the Isaac J. Snipes land; I mean that it adjoined the land that Isaac J. Snipes sold to Reed. Henry Blow went into possession of the land described in his deed shortly after it was made, and he and his brothers and sisters have been in possession and cultivated it ever since, up to two or three years ago."

The defendant, in addition to other instructions asked for, requested the Court to charge the jury that, if they believed the whole of the evidence, the plaintiffs could not recover.

The Court instructed the jury as follows:

" That the deed from John W. Blow to Henry B. Blow was anterior to those under which defendants claimed, and the plaintiffs' right to a favorable response to the issues submitted depended upon the sufficiency of that deed; that the description in said deed was not so indefinite and uncertain as to render it void, but the Court had permitted the introduction of parol testimony to locate and identify the land and fit the description to the land claimed in the complaint, if that could be done, and that the burden of proof was upon the plaintiffs to satisfy the jury, by a preponderance of

evidence, that the land described in the complaint is the same described in the deed to Henry Blow from John W. Blow, and if the jury are so satisfied, they should find for the plaintiffs upon the first issue, and if not, then for the defendants; that if the said fifty acres could not be located or cut off, at the date of said deed to Henry Blow, so as to adjoin the lands of John P. Liverman, John H. Liverman and Isaac J. Snipes, then the plaintiffs cannot recover, and you should find the issues in favor of the defendants; that if the description in said deed does not fit any particular piece of land, then the plaintiffs are not the owners, as alleged. If the fifty acres in controversy were located and agreed upon by John W. Blow at the time he made the deed to his son Henry, and Henry Blow went into possession and used and occupied it by the consent and knowledge of said John W. Blow, and such location adjoined John P. and John H. Liverman and Isaac J. Snipes, and accords with the description in the complaint and deed to Henry you should answer the first issue, Yes. If the land described and conveyed in the deed to Henry Blow is the same land described in the complaint, and the plaintiffs and Henry Blow have been in possession of the land described in the complaint, under said deed and under known and visible boundaries, from 1870 up to three years before this suit was brought, then you should answer the first issue, Yes."

Defendants excepted to the entire charge.

The jury answered the issues in favor of the plaintiffs.

The defendants moved for a new trial, assigning as errors the exceptions hereinbefore specifically enumerated and set forth. Motion overruled. Defendants appealed.

*Mr. R. B. Peebles,* for plaintiffs.
*Messrs. R. W. Winborne* and *E. C. Smith,* for defendants.

AVERY, J.—after stating the facts: The deed from John W. Blow and wife to Henry B. Blow, under whom plaintiffs claim immediately, contains only this description: "Fifty acres of land lying in the county of Hertford and bounded as follows, by the lands of John P. Liverman, John H. Liverman and Isaac J. Snipes." The language of the deed leaves but one question open for parol proof. If the plaintiff could have shown that there was a tract of land in Hertford County, containing fifty acres, and so bounded by the lands of the three persons named in the conveyance as to separate it from other tracts and indicate its limits with reasonable certainty, it was competent for them to do so, but the deed could not have been made operative in any other way. *Harrell* v. *Butler*, 92 N. C., 20; *Allen* v. *Chambers*, 4 Ired. Eq., 126; *Grier* v. *Rhyne*, 69 N. C., 346; *Wharton* v. *Elborn*, 88 N. C., 345; *Capps* v. *Holt*, 5 Jones Eq, 153; *Dickens* v. *Barnes*, 79 N. C., 490; *Hinchey* v. *Nichols*, 72 N. C, 66; *President of D. & D Institute* v. *Norwood*, Busb. Eq., 65; *Cox* v. *Cox*, 91 N. C., 256; *Murdock* v. *Anderson*, 4 Jones Eq., 77; *Mason* v. *White*, 11 Barb. (N. Y.), 173.

In *Harrison* v. *Hahn*, 95 N. C., 28, the late Chief Justice SMITH, for the Court, says: "The office of the descriptive words is to *ascertain* and *identify* an object and *parol proof is heard, not* to *add to or enlarge their scope, but to fit the description to the thing described.* When they are too vague to admit of this, the instrument in which they are contained becomes inoperative and void." There is no testimony tending to show the location of fifty acres of land in Hertford County, bounded on all sides by the lands of the two Livermans and Snipes. A deed that contains no descriptive word or phrase that, with the aid of competent extrinsic testimony, will identify and determine all of its boundary lines, will not pass any estate in land to the bargainee therein named. In *McCormick* v. *Monroe*, 1 Jones, 16, Judge PEARSON says: "This case (referring to *Waugh* v. *Richardson*,

8 Ired., 470) differs from the case under consideration in that here the exception is 'two hundred and fifty acres, previouly granted.' This would point to the means by which the description in the exception may be made sufficiently certain to avoid the objective vagueness by aid of the maxim '*Id certum est, quod certum reddi potest.*' The test of the admissibility of evidence *dehors* the deed is involved in the question whether it tends to so explain some descriptive word or expression contained in it, as to show that such phraseology, otherwise of doubtful import, contains in itself, with such explanation, an identification of the land conveyed. The doctrine finds its support in the maxim cited by Judge PEARSON.

Judge GASTON, in the case of *Massey* v. *Belisle*, 2 Ired., 170, stated the principle very clearly and concisely when he said that "every deed of conveyance must set forth a subject matter, *either certain in itself, or capable of being reduced to a certainty, by a recurrence to something extrinsic to which the deed refers.*"

The rule that the descriptive words in a deed, with the aid of the evidence *aliunde*, to which they point, must, in order to establish the validity, identify the boundaries of the land conveyed, has been sanctioned by this Court, not only upon the idea that there must be a certain subject-matter in the deed, but because its observance is essential to the proper enforcement of the statute of frauds. The evasion is as palpable and as dangerous a violation of the statute when it is accomplished by amending a void contract, as where the entire contract is proven by parol evidence.

A single word in a deed is sometimes held sufficient to show with certainty the source from which information may be sought to determine definitely whether the title to any land rests in a grantee or bargainee. In the case of *Murdock* v. *Anderson*, 4 Jones' Eq., 77, this Court held that a receipt describing land, as "my house and lot, in the town

of Hillsborough," was not a sufficient memorandum, under the statute of frauds, of an agreement to convey land, and was void because of the imperfect description. On the other hand, where the language used in the deed to point out the land was, "*my* house and lot, in the town of Jefferson, Ashe County, North Carolina," it was decided that testimony that the grantor had but one lot in that town was admissible and fitted the description to it, because the word "*my*," with such proof, made the description as definite as "the house and lot, on which I now live." *Carson* v. *Ray*, 7 Jones, 609. Any lot in a town can be located by metes and bounds by the map of the town in which it is situate. *Davidson* v. *Arledge*, 97 N. C., 172.

In *Wharton* v. *Eborn*, 88 N. C., 345, it was held that extrinsic testimony was competent to locate the land, because in addition to describing it, as in B Township, Beaufort County, adjoining the lands of T. and H., containing one hundred and fifty acres, it was decided to be "the same land conveyed by John W. Earle to said Rowland by deed, dated May 28th, 1868," thus adopting the more particular description in the last named deed. In *Brown* v. *Coble*, 76 N. C., 391, the description of the land as "that John Brown, ancestor of the petitioner, died seized of and *possessed* of a tract of land in said county of Guilford, on the waters of Stinking Quarter, adjoining the lands of _ _ _ _," was held sufficiently definite, upon the principle stated in *Carson* v. *Ray, supra.* In *McGlawhorn* v. *Worthington*, 98 N. C., 199, where the deed purported to convey "all that tract of land, lying in the county of Pitt, and Sta·e of North Carolina, and *known as a part of the John Tripp land, adjoining the lands of B. W. and others*, containing one hundred acres," it was held competent to locate, by parol testimony, a tract of land known as a part of the John Tripp land, but the deed was held void for failure to offer any evidence sufficient to be submitted to the jury to so identify the land. This ruling was in accord-

ance with the principle announced in *Farmer* v. *Batts*, 83 N. C , 387, which has been considered as marking the extreme limit to which the Courts would go in fitting ambiguous descriptions to land. There the language of the deed was, "containing one hundred and ninety-three acres more or less, it being *the interest in two shares*, adjoining the lands of James Barnes, Eli Robbins and others," was declared sufficiently definite to be susceptible of explanation by testimony, to show that there was a tract of land adjoining the lands of the parties named, and that *it was known as the one in which William Dixon* (who signed the receipt, relied on as the contract of sale,) *claimed two shares.* The phraseology pointed, in that case, beyond the proof that the land had been designated as that claimed by Dixon, to a partition proceeding, in which there was a possibility of showing a record of more certain designation of the boundaries. The case of *Edwards* v. *Bowden*, 99 N. C., 80, is also an extreme one, almost on the shadowy line between definite and void descriptions. The land, however, could be located with clearly defined boundaries by showing that fifty acres of the part of the original Gray Pridgen tract that was allotted or conveyed to Patrick Lynch and R. N. Bowden was situate on the east side of the road, described in the deed, detached from their other lands. The deed could not be held void upon its face, therefore, when its phraseology suggested the possibility of locating the land purporting to be conveyed by it by any such competent explanatory evidence.

It was not insisted on the argument that there was a fatal variance between the land declared for in the complaint and that embraced in the descriptive clause of the deed offered to show title. The complaint, as it appears in the transcript, substitutes the word "adjoining" for "bounded by." In *Allen* v. *Chambers, supra,* Chief Justice RUFFIN delivering the opinion, the language in the receipt, "a certain tract of land, lying on Flat River, including Taylor Hicks' spring-

house and lot, adjoining the lands of Lewis, Davies, Womack and others," is declared too vague, because " it mentions no quantity nor how any land is to be laid off around the improvements of Hicks."

In *Harrell* v. *Butler*, 92 N. C., 20 (Justice ASHE delivering the opinion), the description declared too indefinite was, "all my interest in a piece of land adjoining the lands of J. J. Jordan, Joseph Keen and others." In *Hinchey* v. *Nichols*, 72 N. C., 66, the boundaries set forth in the grant were as follows: "A tract of land containing 173 acres, lying and being in our county of Wilkes, on a big branch of Luke Lee's Creek, beginning at or near the path that crosses said branch that goes from Crane's to Sutton's, on a stake, running west 28 chains, 50 links, to a white oak in Miller's line; then north 60 chains to a stake; then east 28 chains, 50 links, to a stake; then south 60 chains to the beginning." The Court held that there was no possible way of identifying the land except by locating the white oak at the end of the first line, as the stakes were all imaginary points, unless located in the grant by distance from some fixed point or object.

In *Dickens* v. *Barnes, supra*, this Court held that the deed offered in evidence did not "constitute color of *title,*" and possession under it was not adverse. The land was described as "one tract of land lying and being in the county aforesaid, adjoining the lands of A and B, containing twenty acres, more or less."

The case of *Hinton* v. *Roach* 94 N. C., 106, is obviously not only in direct conflict with *Allen* v. *Chambers, supra; Harrell* v. *Butler, supra; Grier* v. *Rhyne, supra,* and *Dickens* v. *Barnes, supra,* decided previously, but with the subsequent case of *McGlawhorn* v. *Worthington, supra.* There, the description was "a certain tract in N. township, adjoining the lands of H., S. and others, said to contain 37½ acres." To show that the opinion in that case (*Hinton* v. *Roach*) was inadvertent, not only because it is irreconcilable with previous and subse-

quent adjudications of this Court, but because it is not in accordance with the reasons by which the Court was guided in reaching its conclusions in many cases that we have cited, we reproduce the reasoning of the same learned Justice in *Howell* v. *Butler*, where the descriptive clause was almost identical with that in *Hinton* v. *Roach*, the only difference being in favor of the sufficiency of the former, in that it pointed, by the use of the words "*my interest*," to the possibility of offering evidence admissible under the rule laid down in *Carson* v. *Ray* and *Farmer* v. *Batts*. The Court say (in *Harrell* v. *Butler*): "In *Kea* v. *Robeson,* 5 Ired. Eq., 373, it was held that when a deed fails to describe the subject matter of a conveyance so as to denote upon the face of the instrument what it is in particular, it is totally inoperative unless it contains a reference to something which renders it certain. The want of such a description in a deed is a defect which renders it totally defective. There is nothing on the face of this deed by which the land sought to be conveyed can be identified; nor is there any reference to anything which renders it certain. The fact *that it is described as adjoining the lands of J. J. Jordan, Joseph Keen and others cannot have that effect, for that description applies to one tract as well as another that adjoins those lands. It might, according to the description, lie as well on one side as the other of the lands belonging to those persons.*" The ruling seems to have originated in a misinterpretation of the reason on which the decision in *Farmer* v. *Batts* rested, in that unusual and unauthorized significance was given to the words "*and others*," whereas, in *McGlawhorn* v. *Worthington*, the Court placed the proper construction upon the principle announced in that case by holding that the testimony would have been competent if offered to show the location of a tract of land "known as a part of the John Tripp land." Nor does the fact that the supposed number of acres is given distinguish *Hinton* v. *Roach* from any of those cases where the holding

of the Court is irreconcilable with the opinion in that case, except *Harrell* v. *Butler.*

The syllabus in *Kitchen* v. *Herring,* 7 Ired. Eq., 190, is misleading, for while the description given in the receipt was, " lying on the South side of Black River, adjoining lands of William Hofford and Martial," it is clear that Pridgen could be compelled by the Court to convey to Kitchen by invoking the aid of a principle very different from a declaration that the descriptive words in the receipt were sufficiently definite. The receipt was evidence that Kitchen paid the purchase-money for the land to Pridgen. It was admitted that Pridgen took a conveyance for Herring in January following to himself for the very land for which Kitchen had advanced the purchase-money. If this fact had not been admitted, it would have been competent for Kitchen to prove it, and thereby establish a parol trust and show his right to demand a conveyance from Pridgen, who bought with his money. There is, therefore, no difficulty in reconciling the conclusion in *Kitchen* v. *Herring* with the rule so clearly stated by the same Judge (PEARSON) in *McCormick* v. *Monroe, supra.*

The complaint may have been amended or incorrectly copied, and we will not, therefore, *ex mero motu,* dismiss the action, because we hold that the words, "adjoining the lands of John P. Liverman, John H. Liverman and Isaac J. Snipes, and containing fifty acres" (in paragraph five of the complaint), do not describe any land so definitely as to give the plaintiffs a standing in Court, nor on the ground that after the evidence was heard there was a fatal variance between the allegation and the proof. *Allen* v. *Chambers, supra; Tucker* v. *Baker,* 86 N. C., 1; *Knowles* v. *Railroad Co.,* 102 N. C., 62. The point was not made, as it might have been.

The fact that the Court has sustained several levies upon lands upon Justices' judgments where the description was

such as has been held insufficient in deeds, may be reconciled with the rule we have laid down, when we remember that their validity was made to depend, not on the principles we have discussed (the common law requisites of a deed on the statute of frauds), but upon the construction of the law prescribing how levies should be made. Section 16, ch. 62, Revised Code, required the officer on his return on a Justice's judgment to set forth on the execution "what lands and tenements he has levied on, where situate, on what water-course, and what land it adjoins." This Court held in *Ward* v. *Sanders*, 6 Ired. 382 (citing with approval *Smith* v. *Low*, 2 Ired., 457, and *Blanchard* v. *Blanchard*, 3 Ired., 105), that the levy would be sustained if the "description was equivalent to that prescribed" in the statute. In *Hilliard* v. *Phillips*, 81 N. C., 99, extrinsic testimony to fit the description given in the deed, which was the same as the levy, seems to have been admitted to identify the tract of land on which the defendant in execution lived. The language, "*the land of the defendant in the county of Chatham, on the waters of Tyson Creek*, adjoining the lands of Bryant Burroughs and others, containing two hundred acres more or less," seems to have been construed like "my lot in the town of Jefferson," in *Carson* v. *Ray*, to mean the land on which the defendant lived, and it was, therefore, held competent to show that he had but one tract of land, that on which he lived on Tyson Creek in Chatham County. In the extreme case of *Harrison* v. *Hahn*, 95 N. C., 28, a levy was held void because of uncertainty in the description

But it was insisted that one of the witnesses testified that the Snipes tract of one hundred and twenty-five acres (which belonged originally to John W. Blow) was completely surrounded and bounded by the lands of the persons named in the deed. Granting that to be true, we still encounter the insurmountable difficulty that there is nothing in the

descriptive clause from which we can identify the particular fifty acres of that tract conveyed by the plaintiffs' deed. *Grier* v. *Rhyne*, 69 N. C., 346.

For the error pointed out the defendant is entitled to a new trial.

Error.