## W. D. PATTON ET AL. v. J. W. SLUDER.

(Filed 23 December, 1914.)

**1. Deeds and Conveyances—Description—Parol Evidence.**

A description contained in a deed or contract to convey lands is sufficiently definite to admit of parol evidence of identification when it is capable of being reduced to certainty by reference to something extrinsic to which the instrument refers.

**2. Same—Acquired by Adjoining Owner—Identity of Lands—Interpretation of Statutes.**

When P., the owner of a tract of land, has acquired by deed lands adjoining his own sufficiently described by metes and bounds, and thereafter conveys them with the same description and designated lines and boundaries, which description is used in the subsequent conveyances, with reference to the original deed for further description, and the possession of the land has been held successively by those under whom a party claims, and he tenders a deed thereto under his contract to convey, with the same description set out in his claim of title, and the other party refuses to accept it, it is *Held*, that the *locus in quo* did not lose its identity because P. owned the adjoining tract at the time of acquiring the title thereto, and that parol evidence of identification of the lands to fit the description in the deed is competent both under the later decisions of our Court and our statutes, Revisal, secs. 948, 1005; and it is *Further held*, that this principle is not affected by the fact that the original deeds call for a less number of acres than the later ones, the description of the lands and boundaries given being identical.

APPEAL by defendant from *Cline, J.*, at November Term, 1914, of BUNCOMBE.

Civil action heard on case agreed. The action was by vendor to enforce specific performance of a contract for sale of land, and the relevant facts are stated in the case agreed, as follows:

"The plaintiffs and defendant on 16 May, 1914, entered into a contract, whereby the plaintiffs agreed to sell and convey, in fee simple, free from all encumbrance, and the defendant agreed to purchase at the price of $2,915, to be paid in cash, all that certain tract or parcel of land situate, lying, and being in the county of Buncombe and State of North Carolina, on the waters of Swannanoa River, and being more particularly bounded and described as follows, towit: On the headwaters of Swannanoa River, adjoining the lands of William Hemphill and others, beginning on a stake in William Hemphill's line, and runs south 56 degrees west 42 poles to a stake; thence north 40 degrees west 126 poles to a pine, W. Y. Porter's corner; thence north 3 degrees east 64 poles to a stake; thence south 33 degrees east 92 poles to a stake; thence south 48 degrees east 88 poles to the beginning, containing 41 acres, be the same more or less.

"That the above described land is a part of a larger tract shown on the map hereto attached, the title to which was vested in one Elizabeth Gilliam, and after her death was duly partitioned among her heirs, as shown on said map, the particular tract hereinafter described being the one marked on said map 'W. C. Gilliam,' and was by deed dated 1 May, 1875, registered 31 August, 1875, containing the same description as that hereinbefore set out, duly conveyed by the said W. C. Gilliam to one W. Y. Porter, Sr., and it is agreed that the fee-simple title to said lands vested by virtue of said deed in the said W. Y. Porter, Sr.

"That at the date of said deed, and at the date of various conveyances hereinafter mentioned, W. Y. Porter, Sr., was the owner of a large tract of land adjoining the above tract and the lands of Hemphill, all of which is correctly shown on the aforesaid map.

"That thereafter, towit, on 13 March, 1877, W. Y. Porter, Sr., executed and delivered to one M. M. Jones a bond for title for a certain tract of land described in said bond as follows: 'On the headwaters of Swannanoa River, adjoining Hemphill heirs, Gilliam heirs, and others, containing 41 acres, more or less.'

"Said bond was duly recorded in the county of Buncombe, 6 November, 1905, and said M. M. Jones, upon the execution and delivery of said bond, entered into possession of a part of the lands first hereinbefore described, claiming title thereto by virtue of the said bond, and the said Jones and the plaintiffs, claiming under him, have been in actual possession of a part of the tract hereinbefore described, towit, that part thereof which was cleared, and on which was a house, since the date of said bond, the other portion of said tract being woodland, and no actual possession having been had thereon other than the occasional taking of wood therefrom from time to time, as the same was desired, the part in possession being shown by the letter 'A' and dotted line on map.

"That the purchase money required by said bond having been paid in full, R. J. Stokely, administrator of W. Y. Porter, Sr., deceased, on 23 December, 1905, executed and delivered to R. J. Jones, wife of the said M. M. Jones, a deed describing the lands therein intended to be conveyed as follows; towit: 'On the headwaters of Swannanoa River, adjoining Hemphill and Gilliam heirs and others, and being the same land referred to in the aforesaid bond or agreement between W. Y. Porter, Sr., deceased, and said M. M. Jones, which bond or agreement was duly recorded in the office of the register of deeds in Book 141, at page 96, of the record of deeds to Buncombe County and State of North Carolina, reference to said bond or agreement being hereby expressly made for the purposes of description.' And that the plaintiffs Patton and Eskridge, by duly executed and recorded deeds, containing the same description as that set out in the bond of Porter to Jones, towit, deed

from M. M. Jones and wife, R. J. Jones, to W. Y. Porter, Jr., and deed W. Y. Porter, Jr., to Patton and Eskridge, now claim the tract hereinbefore first described.

"That at the date of the deed from Gilliam to Porter, and at the date of the bond from Porter to Jones, Porter was the owner of a large tract of land adjoining the tract hereinbefore described, all of which is correctly shown on the map hereto attached, and the tract first hereinbefore described contains by survey 29.8 acres; but thereafter Porter sold and conveyed to other parties the lands adjoining Hemphill and Gilliam, except the *locus in quo.*

"That the foregoing is all the evidence possible to produce tending to identify the land described in the bond and deeds thereafter executed as the land described in the deeds of W. C. Gilliam to W. Y. Porter, Sr., and in the contract between the parties.

"That the plaintiffs have tendered to defendant a deed in fee simple, properly executed, for the lands first hereinbefore described, and that defendant has declined to accept the same, on the ground that the plaintiffs are not the owners in fee simple of said lands, and that said deed does not convey to him a title in fee simple thereto."

On these facts there was judgment for plaintiff, and defendant excepted and appealed, assigning for error that no good title could be made on account of insufficient description in the bond for title to M. M. Jones and the deeds made pursuant to same.

*Fortune & Roberts for plaintiff.*
*Merrimon, Adams & Adams for defendant.*

HOKE, J. The decisions in this State are in very general recognition of the principle that a deed conveying real estate or a contract concerning it, within the meaning of the statute of frauds, must contain a description of the land, the subject-matter of the contract, "either certain in itself or capable of being reduced to certainty by reference to something extrinsic to which the contract refers." *Massey v. Belisle,* 24 N. C., 170.

In the application of this principle there was, at times, some discrepancy in the cases; considered, however, more apparent than real until the decisions of the Court in *Blow v. Vaughn,* 105 N. C., 198, and in *Wilson v. Johnson,* same volume, 211, in which it was held that deeds describing the land as "adjoining the lands of A, B, and others and containing 25 acres, more or less," etc., and another giving description as "adjoining lands of J. P. and J. H. Liverman and Isaac J. Snipes *et al.* and containing 50 acres," were too vague and indefinite to be aided by parol proof.

These decisions, published in 1890, being the cause of much concern in the State as to the validity of titles, the Legislature, in 1891, chapter 465, passed a statute designed to change the principle of construction. Revisal 1905, sec. 948 and sec. 1005. And the Court itself, and apart from the operation of the statutes, in the subsequent case of *Perry v. Scott,* expressly disapproved the two decisions referred to, and it was then held that a deed for land containing the description, "lying and being in Jones County, bounded as follows: on the south side of Trent River, adjoining lands of Colgrave McDaniel *et al.,* containing 360 acres, more or less," was not too vague to permit the reception of parol evidence in aid of the deed, and if the evidence offered in such deed was sufficient to satisfactorily identify the tract of land intended, the deed should be held a valid conveyance so far as the matter of description was concerned.

The case of *Perry v. Scott,* based upon former decisions of the Court, such as *McLawhorn v. Worthington,* 98 N. C., 199; *Farmer v. Batts,* 83 N. C., 387, etc., has been since repeatedly cited with approval (see *Bachelor v. Norris,* 166 N. C., 506; *Johnston v. Mfg. Co.,* 165 N. C., 105; *Hudson v. Morton,* 162 N. C., 6), and being entirely consistent with the legislation referred to, may be considered as controlling where the question is similarly presented.

Applying the principle to the facts in evidence, we concur in the decision of the Superior Court that plaintiffs hold and can convey a good title pursuant to their contract. From these facts, as we apprehend them, it appears that the title of an entire tract being in Elizabeth Gilliam, same was devised amongst her heirs at law and the part allotted to W. C. Gilliam was conveyed by him to W. Y. Porter by deed dated on 1 May, 1875, describing the land by metes and bounds, as shown in the deed presently tendered by plaintiffs under their contract, and same said to contain 41 acres, more or less.

While the facts further show that this tract, when conveyed to W. Y. Porter, adjoined a larger body of land also owned by him, it did not become a part thereof in the sense that it lost its identity, and W. Y. Porter, Sr., having sold all the other land owned by him, gave a bond for title to this tract to M. M. Jones, described as follows: "On the headwaters of Swannanoa River, adjoining the Hemphill heirs, Gilliam heirs, *et al.,* and containing 41 acres, more or less," and the same description enters into one or more deeds since executed, in the line of plaintiff's title.

True, the boundaries of the original deed from Gilliam to Porter, and which accord with the deed now tendered by plaintiff, are said to contain only 29.8 acres; but this does not affect the principle.

The proof shows that it adjoins the land of the Hemphill heirs, the Gilliam heirs, and others; it was the only land in that locality owned by W. Y. Porter, Sr., and comes directly within the principle of *Perry v. Scott* and the language of the statute now controlling the question. Revisal, sec. 948: "No deed or other writing purporting to convey land or an interest in land shall be declared void for vagueness in the description of the thing intended to be granted by reason of the use of the word 'adjoining' instead of the words 'bounded by,' or for the reason that the boundaries given do not go entirely around the land described: *Provided,* it can be made to appear to the satisfaction of the jury that the grantor owned at the time of the execution of such deed or paper-writing no other land which at all corresponded to the description contained in such deed or paper-writing."

The case of *Smith v. Proctor,* 139 N. C., 314, to which we were cited by defendant's counsel, is not in contravention of the principle. "That was a conveyance of a portion of land to contain 40 acres to be taken out of a larger tract of 150 acres," with nothing to indicate the shape and "affording no data whatever by which the divisional line could be established." But in this case the land was a separate tract which, in the original deeds, was fully described by metes and bounds and which the evidence could satisfactorily ascertain and identify from data appearing in deed.

There is no error, and the judgment below must be

Affirmed.