NORTH CAROLINA SELF HELP CORPORATION, ROY L. DAVIS, R. BRUCE ETHERIDGE, GUY E. LENNON, R. B. LENNON AND J. B. PETERSON, v. ZEB V. BRINKLEY AND WIFE, MAY L. BRINKLEY.

(Filed 24 May, 1939.)

**1. Boundaries § 2: Frauds, Statute of, § 9—**

An uncertain description in a deed may be aided by parol to fit the description to the land when the deed itself refers to the source from which evidence *aliunde* may be sought to render the description certain, and when the description in the deed is not patently ambiguous.

**2. Same—Description in this deed held sufficiently certain to render evidence aliunde competent to fit the description to the land.**

The grantors in the deed in question owned an undivided one-half interest in a tract of land upon which a store building was located, and owned the fee in an adjoining tract, both tracts being within the limits of an incorporated town, and being all the land owned by the grantors within the town at the time. The deed recited that the grantors conveyed all their title and interest "in and to a certain store lot in the town . . . containing one-half acre, more or less, the interest hereby conveyed being an undivided one-half interest." *Held:* The term "store lot" may be interpreted as "store house lot," and using all phrases of the description it describes a certain lot on which there is a store house in the said town, and conveys the grantors' one-half interest therein, and since the grantors owned but one lot in the town answering this description, it is sufficiently certain and a peremptory instruction that the deed conveyed the grantors' one-half interest in the first tract of land is without error, but the description is wholly insufficient to include the second tract in which the grantors own the fee, the words "containing one-half acre, more or less," being insufficient even though both tracts together contained one-half acre.

**3. Adverse Possession § 20: Trial § 29b—Charge held for error in failing to instruct jury as to substantive feature of case arising on the evidence.**

When defendants introduce evidence that plaintiffs went into possession of a certain tract of land after asking and obtaining permission of defendants, it is error for the court to fail to instruct the jury that such possession would not be adverse to defendants, even without a request for special instruction, since this is a substantive feature of the case arising on the evidence.

**4. Estoppel § 6a—Elements of equitable estoppel in general.**

An equitable estoppel arises when a party's words or conduct amount to a misrepresentation or concealment of material facts, with knowledge, actual or implied, of their falsity, and with intent that they should be relied on by the other party or the public generally, and the party asserting the estoppel must have been ignorant of the falsity of the representations at the time they were made and at the time they were acted upon, and must have acted in reliance on the representations and have placed himself in a position in which he would be prejudiced if the party estopped were permitted to deny the truth thereof.

5. **Same: Trial § 29b—Charge held for error in failing to instruct jury that party asserting estoppel must have been ignorant of falsity of representations at the time of acting upon them.**

Plaintiffs' evidence tended to show that they went to defendant and sought to buy a certain tract of land, that defendant represented that his sister owned the property and went with plaintiffs to her and knew of their negotiation with her for its purchase, and that some time later they purchased the property from defendant's sister in accordance with the agreement then reached. Defendant elicited evidence that plaintiffs lived near the courthouse and were familiar with business transactions and the registration of deeds, and contended that they had actual or constructive knowledge of defendant's title, and that therefore defendant was not estopped to assert same. *Held:* It was error for the court to fail to charge the jury that plaintiffs must have been ignorant of the facts not only at the time they were negotiating for the purchase of the land, but also at the time they acted on the representations and paid the purchase price to defendant's sister in order for defendant to be estopped by misrepresentation from asserting his title thereto.

APPEAL by defendants from *Thompson, J.,* at October Term, 1938, of DARE.

Civil action to remove cloud upon title to certain land in the town of Manteo, Dare County.

It is admitted that both plaintiffs and defendants claim title under W. T. Brinkley, who died seized of a certain boundary of land fronting on Water Street in the town of Manteo, Dare County, leaving as his only heirs at law four children, Camille Brinkley, Susie Drinkwater, W. C. Brinkley and defendant Zeb V. Brinkley.

Prior to August, 1910, in special proceeding instituted in the Superior Court of Dare County by Theodore S. Meekins, who had acquired the undivided interest of Susie Drinkwater in and to the W. T. Brinkley land, against W. C. Brinkley, Zeb V. Brinkley and Camille Brinkley, said land was actually divided into four separate parts and allotted as follows: Lot No. 1 to Theodore S. Meekins, Lot No. 2 to Camille Brinkley, Lot No. 3 to W. C. Brinkley, and Lot No. 4 to defendant, Zeb V. Brinkley. Beginning with No. 1 on the north the lots adjoin in numerical order.

Upon death of Camille Brinkley in 1915, Susie Drinkwater acquired title to Lot No. 2. On 17 April, 1921, W. C. Brinkley died intestate, seized of Lot No. 3, and leaving as his only heirs at law Susie Drinkwater and defendant Zeb V. Brinkley.

By reason of the foregoing facts, on 29 September, 1922, Susie Drinkwater owned all of Lot No. 2 and an undivided half of Lot No. 3, and Zeb V. Brinkley owned an undivided half of Lot No. 3, and all of Lot No. 4. This was all the property Zeb V. Brinkley owned in the town of Manteo, North Carolina, at that time.

(a) On that date defendants executed and delivered to Susie Drinkwater a deed which is duly registered, containing the following description: "The parties of the first part . . . convey all of their right, title, interest and estate in and to a certain store lot in the town of Manteo, in the County of Dare, North Carolina, containing one-half acre, more or less, the interest hereby conveyed being an undivided one-half interest." (b) On 3 October, 1922, Susie Drinkwater and husband executed and delivered deed to S. A. Griffin and O. J. Jones, purporting to convey by specific description a boundary of land covering Lots 2, 3 and 4. (c) On 1 September, 1923, S. A. Griffin and O. J. Jones executed and delivered to Jesse Midgett, Jr., a deed purporting to convey by specific description all of Lot No. 2 and the adjacent, or northern, half of Lot No. 3, including the old W. T. Brinkley store building. (d) On 1 January, 1926, O. J. Jones executed a deed to S. A. Griffin purporting to convey one-half undivided interest in the remaining southern half of Lot No. 3 and all of Lot No. 4. (e) On 15 July, 1935, S. A. Griffin executed and delivered deed to plaintiff Roy L. Davis, purporting to convey the same property described in the deed to him from O. J. Jones, and (f) by *mesne* conveyances from Roy L. Davis, his coplaintiffs claim interests and rights therein. All of these deeds were introduced in evidence over defendants' objection.

1. Plaintiffs allege and contend that by their deed to Susie Drinkwater, on 29 September, 1922, defendants conveyed not only an undivided half interest in Lot No. 3 but all of Lot No. 4. Defendants deny that this is the effect of that deed, and contend that the description there is patently ambiguous and void for uncertainty. On the trial below plaintiffs were permitted to offer parol evidence, over objection by defendants, tending to show that the boundary before the partition was known in the community as the Brinkley property, or the Brinkley store lot, and that after the partition Lots Nos. 2, 3 and 4 were so known; that there was a store building on the boundary; that after the partition this building was situated partly on Lot No. 2 and partly on Lot No. 3; and that Lots 2, 3 and 4 contained one-half acre. The witness O. J. Jones, testifying for plaintiff, said: "During the time Mr. Griffin and myself had in possession Lots 2, 3 and 4, we sold half of the tract which would be all of Lot No. 2, and about one-half of Lot No. 3 to Jesse Midgett, Jr. We made the property into two lots instead of three." Evidence for plaintiffs further tends to show that there were then many store lots in the town of Manteo.

Plaintiff was also permitted to offer, over defendants' objection, evidence tending to show that at the time the defendants executed and delivered to Susie Drinkwater the deed of 29 September, 1922, she conveyed to defendant Zeb V. Brinkley certain farm property which she received from the W. T. Brinkley estate.

2. Plaintiffs further allege and contend, and offer evidence tending to show, that upon delivery of deed from Susie Drinkwater on 3 October, 1922, O. J. Jones and S. A. Griffin went into possession of the property and occupied the store building and continued to so hold same until 1 September, 1923, when they sold to Jesse Midgett, Jr., Lot No. 2 and half of Lot No. 3, including the part on which the store building was situated; that while the remaining portion of Lot No. 3 and all of Lot No. 4 were then vacant, with no fence around any of it, they were in possession of same; that within the year after 1 January, 1926, the date that O. J. Jones sold his interest in same to S. A. Griffin, Griffin built a garage in the southern corner of Lot No. 4, and that the garage was used by him continuously until other buildings were placed upon the property after the conveyances to plaintiff Roy L. Davis, and that since then he and those claiming under him have occupied those buildings.

On the other hand, defendants deny that O. J. Jones and S. A. Griffin, or either of them, have been in adverse possession of southern half of Lot No. 3 or of Lot No. 4. They aver and offer evidence tending to show that before erecting the garage S. A. Griffin obtained express permission from the defendant Zeb V. Brinkley to place it on the property and to use and occupy it. Defendants also offer testimony tending to show that Griffin otherwise recognized their ownership of Lot No. 4.

3. Plaintiffs further alleged and offered evidence tending to show that O. J. Jones, being interested for himself and his partner, S. A. Griffin, in buying Lots 2, 3 and 4 of the W. T. Brinkley property, went to Virginia Beach, Virginia, where defendants then resided, and on Labor Day, 1922, talked with defendant Zeb V. Brinkley about purchasing same; that at that time Brinkley stated that he had sold his interest in the property to his sister, Mrs. Drinkwater, who lived nearby; that thereupon Brinkley went with him to the home of Mrs. Drinkwater, and was present when he, Jones, acting and relying upon the statements of Brinkley, negotiated with her for the purchase of the property, at the price of $2,000; that he did not then pay to Mrs. Drinkwater any part of the purchase price, but did pay a part when the deed was delivered and the balance afterwards.

By reason of this evidence plaintiffs contend that defendants are estopped to assert title to any of the said land.

On the other hand, defendants deny the material parts thereof, and by cross-examination of O. J. Jones, witness for plaintiffs, elicited evidence tending to show that in 1922 Jones was a man of business experience, having been county commissioner, postmaster and merchant for many years; that during the period between Labor Day and 3 October, 1922, the date of deed from Mrs. Drinkwater, his place of business was

across the street from the courthouse; and that he knew records of deeds for Dare County were kept in the courthouse. Thereupon defendants contend that Jones knew, or by the exercise of reasonable diligence should have known the condition of the title, and that plaintiffs cannot invoke the doctrine of equitable estoppel. Pursuant to these contentions the case was submitted to the jury on these issues:

1. Are the plaintiffs Roy Davis, R. Bruce Etheridge, Guy H. Lennon, R. B. Lennon, and J. B. Peterson, the owners of that portion of the lands described in paragraph 11 of the complaint which embraces a portion of Lot No. 3 of the W. T. Brinkley division?

2. Are the plaintiffs Roy Davis, R. Bruce Etheridge, Guy H. Lennon, R. B. Lennon and J. B. Peterson, the owners of Lot No. 4 of the W. T. Brinkley division?

3. Are the defendants estopped by their conduct from asserting title to Lot No. 4 of the W. T. Brinkley division?

The court peremptorily instructed the jury to answer the first issue "Yes." The jury also answered the other issues "Yes."

From judgment on the verdict for plaintiffs, defendants appeal and assign error.

*McMullan & McMullan, Royall, Gosney & Smith, and Howard E. Manning for plaintiffs, appellees.*

*Worth & Horner for defendants, appellants.*

WINBORNE, J. We are of opinion that defendants' exceptive assignments with respect to failure of the court to charge in relation to the second and third issues are well taken. We find no error in the judgment below as it relates to the first issue.

1. Defendants challenge the sufficiency of the description in the deed of 29 September, 1922, from Zeb V. Brinkley and wife to Susie Drinkwater, to include their undivided one-half interest in Lot No. 3 or the fee in Lot No. 4.

"It is . . . a general rule that the deed must be upheld, if possible, and the terms and phraseology of description will be interpreted with that view and to that end, if this can reasonably be done. The Court will effectuate the lawful purposes of deeds and other instruments if this can be done consistently with the principles and rules of law applicable." —*Merrimon, J.,* in *Edwards v. Bowden,* 99 N. C., 80, 5 S. E., 283.

The decisions of this Court generally recognize the principle that a deed conveying land within the meaning of the statute of frauds must contain a description of the land, the subject matter of the deed, either certain in itself or capable of being reduced to certainty by reference to something extrinsic to which the deed refers. *Massey v. Belisle,* 24

N. C., 170; *Harris v. Woodard,* 130 N. C., 580, 41 S. E., 790; *Cathey v. Lumber Co.,* 151 N. C., 592, 66 S. E., 580; *Bateman v. Hopkins,* 157 N. C., 470, 73 S. E., 133; *Patton v. Sluder,* 167 N. C., 500, 83 S. E., 818; *Timber Co. v. Yarbrough,* 179 N. C., 335, 102 S. E., 630. The office of description is to furnish, and is sufficient when it does furnish, means of identifying the land intended to be conveyed. Thompson on Real Property, Vol. 4, sec. 3074. *Harrison v. Hahn,* 95 N. C., 28; *Cathey v. Lumber Co., supra; Bissette v. Strickland,* 191 N. C., 260, 131 S. E., 655. Where the language used is patently ambiguous, parol evidence is not admissible to aid the description. But when the terms used in the deed leave it uncertain what property is intended to be embraced in it, parol evidence is admissible to fit the description to the land. Such evidence cannot, however, be used to enlarge the scope of the descriptive words. The deed itself must point to the source from which evidence *aliunde* to make the description complete is to be sought. Thompson on Real Property, Vol. 4, sec. 3088, *et seq. Murdock v. Anderson,* 57 N. C., 77; *Capps v. Holt,* 58 N. C., 153; *Robeson v. Lewis,* 64 N. C., 734; *Edwards v. Bowden, supra; Blow v. Vaughan,* 105 N. C., 198, 10 S. E., 891; *Cathey v. Lumber Co., supra; Alston v. Savage,* 173 N. C., 213, 91 S. E., 842; *Green v. Harshaw,* 187 N. C., 213, 121 S. E., 456.

Descriptions such as these have been held to be sufficiently definite to admit of parol proof to identify the land: "My house and lot in the town of Jefferson, N. C."—*Carson v. Ray,* 52 N. C., 609; "Her house and lot north of Kinston"—*Phillips v. Hooker,* 62 N. C., 193; "My farm"—*Sessoms v. Bazemore,* 180 N. C., 102, 104 S. E., 70. On the other hand, "One house and lot in the town of Hillsboro" is held insufficient. *Murdock v. Anderson, supra.* These are indicative of the trend of decisions in this State.

Applying these principles and adverting to the description in the deed before us, these are the means by which the lot intended to be conveyed may be identified: (1) "A certain store lot;" (2) "In the town of Manteo, in the said County of Dare, North Carolina;" (3) "All of their (grantors') right, title, interest and estate;" and (4) "The interest hereby conveyed being an undivided one-half interest." Webster gives as one of the many definitions of the word 'store': "A storehouse; a warehouse; magazine; . . . any place where goods are kept for sale; . . . a shop." That definition may reasonably be applied here to mean a certain storehouse lot. Hence, the descriptive words may be fairly interpreted as meaning a certain lot on which there is a storehouse in the town of Manteo, Dare County, North Carolina, in and to which all the right, title, interest and estate of the grantors thereby conveyed is an undivided one-half interest. We are of opinion that the

description is sufficiently definite to admit of parol evidence for the purpose of identification. The question then arises: On the evidence in this case, does this description fit any particular lot in the town of Manteo? The evidence indicates conclusively that it fits only Lot No. 3 of the subdivision of the W. T. Brinkley property. That is the only store lot in Manteo in which the defendants then had an undivided one-half interest. In other words, it requires the combined phrases to make the description sufficient to identify Lot No. 3. Hence, we hold there is no error in the ruling and instruction of the court with respect to the first issue. We are of opinion, however, that the description is wholly insufficient to include Lot No. 4.

The words "containing one-half acre, more or less" are of too general meaning to materially aid the description given.

2. Defendants assign as error the failure of the court to charge the law with respect to their contention that possession of Lot No. 4 by S. A. Griffin with permission of Zeb V. Brinkley would not be adverse possession. The court defined adverse possession, but, in applying the definition to the evidence, failed to charge that if the erection and use of the garage by Griffin were with the permission and approval of Brinkley such possession would not be adverse and would not tend to ripen title in plaintiffs. This affected a substantive right to which without request defendants are entitled. *Spencer v. Brown,* 214 N. C., 114, 198 S. E., 630. This failure is error affecting the second issue.

3. Defendants assign as error, with respect to the third issue, the failure of the court to charge the jury in substance, that if O. J. Jones at the time of taking the deed from Mrs. Drinkwater and paying the purchase money knew, or by the exercise of reasonable diligence could have known, the status of the title to the property involved, then the doctrine of equitable estoppel would not apply. In the light of the evidence in the case we are of opinion that this exception is well taken. The constituent elements of a good equitable estoppel are stated in *Boddie v. Bond,* 154 N. C., 359, 70 S. E., 824, quoting from Eaton in treatise on Equity, as follows:

"1. Words or conduct by the party against whom the estoppel is alleged, amounting to a misrepresentation or concealment of material facts.

"2. The party against whom the estoppel is alleged must have knowledge, either actual or implied, at the time the representations were made, that they were untrue.

"3. The truth respecting the representations so made must be unknown to the party claiming the benefit of the estoppel at the time they were made and at the time they were acted on by him.

"4. The party estopped must intend or expect that his conduct or representations will be acted on by the party asserting the estoppel, or by the public generally.

"5. The representations or conduct must have been relied and acted on by the party claiming the benefit of the estoppel.

"6. The party claiming the benefit of the estoppel must have so acted, because of such representations or conduct, that he would be prejudiced if the first party be permitted to deny the truth thereof."

The vice in the charge of the court is that it appears to relate only to the time the statements were alleged to have been made by defendant Zeb V. Brinkley on Labor Day, and not to the time Jones paid the purchase price. The truth respecting the representations must be unknown to the party claiming the benefit of the estoppel, not only at the time they were made but at the time they were acted on by him.

Other assignments are not considered, as the matters to which they relate may not recur on another trial.

Plaintiffs are entitled to judgment on the first issue, but there must be a new trial on the second and third issues.

Affirmed in part.

New trial in part.