WAYNE FINANCE CORPORATION v. DAMON SHIVAR, JOE W. ALLEN, AND W. VICTOR VENTERS, T/AS JACKSONVILLE WHOLESALE AUCTION COMPANY

No. 704SC245

(Filed 24 June 1970)

1. **Automobiles § 5;   Estoppel § 4— transfer of title — failure to perfect liens on automobiles — estoppel**

   Plaintiff finance company was estopped from asserting its liens on automobiles whose certificate of title plaintiff had surrendered to defendant automobile auction company upon defendant's promise that it would sell the automobiles and deliver the proceeds to plaintiff in payment of its notes and chattel mortgages held by plaintiff, where (1) the certificates of title as delivered to defendant bore no indication of plaintiff's liens, (2) the plaintiff, prior to the effective date of G.S. 20-58 relating to the perfecting of security interests in automobiles, failed to record the chattel mortgages, and (3) the plaintiff, after the effective date of G.S. 20-58, failed to perfect its liens in the manner required by statute.

2. **Sales § 3;   Estoppel § 4— transfer of chattel — indicia of ownership — estoppel**

   Where one entrusts possession of a chattel to another and at the same time clothes him with indicia of ownership, the true owner or lien holder is estopped to claim ownership as against an innocent purchaser who pays value to the possessor in reliance on the indicia of title.

3. **Estoppel § 4— equitable estoppel**

   Equitable estoppel is to be applied as a means of preventing injustice and must be based on the conduct of the party to be estopped which the other party relies upon and is led thereby to change his position to his disadvantage.

APPEAL by plaintiff from *Cowper, J.,* December 1969 Session, ONSLOW Superior Court.

The allegations of plaintiff's complaint may be summarized as follows: Plaintiff is a corporation engaged in the automobile finance business in Wayne County. Damon Shivar is also a resident of Wayne County. Defendants Allen and Venters are residents of Wayne County and are engaged in the business of operating Jacksonville Wholesale Auction Company in Jacksonville. Defendants are hereinafter referred to as Auction Company. Plaintiff is payee and owner of certain notes executed by Damon Shivar. The notes were secured by chattel mortgages on five automobiles. Plaintiff had financed a number of other automobiles for Shivar. The customary practice was for plaintiff to surrender the title certificates to Shivar upon his promise to sell the vehicles and then pay plaintiff the sum due on each vehicle, as it was sold. Following this custom, on or about 3 January 1962 Shivar asked plaintiff for the title certificates to the five vehicles and "represented to the plaintiff that he was going to take said automobiles to a car sale and he would deliver the proceeds from the said sale of automobiles to the plaintiff in payment of the notes and chattel mortgages held by the plaintiff; that relying on the representations of the defendant, Damon Shivar, the plaintiff surrendered the titles to said automobiles to the defendant, Damon Shivar." It appears that Shivar then delivered the automobiles to the defendant Auction Company and was permitted to draw sight drafts with the titles attached against the Auction Company in payment therefor. Shivar failed to pay plaintiff as he had agreed to do. Plaintiff made demand on the Auction Company for the return of the vehicles and, upon refusal, instituted this action.

Shivar filed no answer and the disposition of the case against him is not disclosed by the record.

At the conclusion of plaintiff's evidence, judgment of involuntary nonsuit was entered in the case against the Auction Company. Plaintiff appealed.

*Sasser, Duke and Brown by John E. Duke and Herbert B. Hulse for plaintiff appellant.*

*Venters and Dotson by Carl V. Venters for defendant Auction Company.*

VAUGHN, J.

[1]    The plaintiff contends that the trial court committed error in allowing the defendants' motion for judgment of nonsuit. The following testimony presented by plaintiff is pertinent.

Mr. H. Blair Stevens, an employee of Wayne Finance Company, testified:

". . . At that time I gave Mr. Shivar these titles I had no chattel mortgage recorded at that time. In the titles, when I returned them to Mr. Shivar had no liens showing on them. I am familiar with the law at that time. I did know that the law in 1962 required that any liens against an automobile must be shown on the title. I did not deliver any of these titles back to Mr. Shivar until 1962, and several of the documents had been given to me in December, and two in January, on January 4.

"At that time the liens did not show on any of these titles. . . . I trusted Mr. Shivar with the title certificates without recording my mortgage or without putting any liens on the title . . . I entrusted him with these for the purpose of permitting him to carry them to the market and selling them. . . . I felt I was going to be paid when I released these titles to Mr. Shivar. We tried to locate Mr. Shivar for approximately a week after we released the titles and we were unable to do so. I turned the matter over to the FBI and they came in to assist us and he was arrested by them. He was convicted of the crime of fraud."

. . .

". . . On the cars that are purchased to have a lien recorded in the titles, the dealer would have to send through Raleigh and put it in his name and it is objection — it is just one of those things dealers object to. . . .

"I said it was customary to do it this way. I was aware that the law was different from my custom after the law was passed. . . ."

Damon Shivar testified for the plaintiff stating that:

"At the time I carried the cars and titles to Jacksonville Auto Auction, these titles were clear, they showed no liens. In fact, my arrangement with them was that the title had to be clear or the draft wouldn't clear. All of the drafts did clear. . . ."

The plaintiff called the defendant J. W. Allen, who testified:

". . . In order for a dealer to sell an automobile through our auction during that period of time he had to own the un-

encumbered title to the vehicle. He had to have a clear title to the vehicle. . . ."

It appears from plaintiff's own evidence that the certificates of title to the automobiles were delivered to the defendant Auction Company bearing no indication of the liens of the plaintiff. In fact the chattel mortgages were not recorded until after the delivery of the titles. The applicable statute, G.S. 20-58, effective 1 January 1962, is in part as follows:

"§ 20-58. Perfection of security interests generally. (a) Except as provided in G.S. 20-58.9, a security interest in a vehicle of a type for which a certificate of title is required is not valid against creditors of the owner or subsequent transferees or lien holders of the vehicle unless perfected as provided in this Chapter.

"(b) A security interest is perfected by delivery to the Department of the existing certificate of title if the vehicle has been previously registered in this State, and if not, an application for a certificate of title containing the name and address of the lien holder, the date, amount and nature of his security agreement, and the required fee. The lien is perfected as of the time of its creation if the delivery of the certificate or application to the Department is completed within ten days thereafter, otherwise it is perfected as of the time of delivery.

. . .

§ 20-58.1. Liens subsequently created. If an owner creates a security interest in a vehicle after the original issuance of a certificate of title to such vehicle.

(1) The owner shall immediately execute an application, on a form the Department prescribes, to name the lien holder on certificate, showing the name and address of the lien holder, the amount, date and nature of his security agreement, and cause the certificate, application and the required fee to be delivered to the lien holder.

(2) The lien holder shall immediately cause the certificate, application and the required fee to be mailed or delivered to the Department."

**[1, 2]** The plaintiff did not perfect a security interest pursuant to the statute nor did it, prior to the effective date of G.S. 20-58, record the chattel mortgages. The plaintiff did nothing to protect its

interest. Moreover, not only did it not perfect its security interest as required by the statute, but it allowed Shivar to have possession of the automobiles and the clear certificates of title. Since no lien appeared on the certificate of title when the defendant Auction Company gave value for the automobiles, the plaintiff is estopped from asserting its lien. It had no perfected security interest. Plaintiff gave to Shivar complete *indicia* of ownership, possession of the vehicles and clear certificates of title. Where one entrusts possession of the chattel and at the same time clothes him with *indicia* of ownership, the true owner, or as here the lien holder, is estopped to claim ownership as against an innocent purchaser who pays value to the possessor in reliance on the *indicia* of title. *Homes, Inc. v. Bryson,* 273 N.C. 84, 159 S.E. 2d 329. The rule is stated in *Hawkins v. Finance Corp.,* 238 N.C. 174, 77 S.E. 2d 669:

> "However, where the owner of a chattel clothes another not only with possession thereof, but also with such *indicia* of ownership as is reasonably calculated to mislead others having a right to rely thereon into believing that the ownership or power of disposition is vested in the bailee, and does so mislead a purchaser or encumbrancer, who, acting in reliance upon such apparent ownership or right of disposition, parts with value or extends credit to the bailee, in good faith and without knowledge, actual or constructive, of the true ownership of the property, such purchaser or encumbrancer will be protected and the true owner will be estopped from denying the possessor's right to sell or encumber the chattel. Under such circumstances, equity will not permit the true owner to gainsay the reasonable inference drawn from his conduct in clothing the possessor with such *indicia* of ownership. 19 Am. Jur., Estoppel, Sec. 68; 6 Am. Jur., Bailments, Sec. 129; American Law Inst., Restatement, Agency, Sec. 202; Annotations: 151 A.L.R. 690; 18 A.L.R. 2d 813. See also Annotation 95 A.L.R. 1319; *Bank v. Winder, supra; Mason v. Williams,* 53 N.C. 478; *Mason v. Williams,* 66 N.C. 564. The rule rests upon the broad equitable doctrine that where one of two equally innocent persons must suffer, he who has so conducted himself, by his negligence or otherwise, as to occasion the loss, must sustain it. *S. v. Sawyer,* 223 N.C. 102, 25 S.E. [sic] 443; *Bank v. Liles,* 197 N.C. 413, 149 S.E. 377; *Railroad Co. v. Kitchin,* 91 N.C. 39."

[3]    Equitable estoppel is to be applied as a means of preventing injustice and must be based on the conduct of the party to be estopped which the other party relies upon and is led thereby to change

his position to his disadvantage. *Smith v. Smith,* 265 N.C. 18, 143 S.E. 2d 300. The elements and what is necessary to establish in order to estop one from asserting a right were clearly stated by Walker, J., in *Boddie v. Bond,* 154 N.C. 359, 70 S.E. 824. The test enunciated there has been repeatedly approved. *Hawkins v. Finance Corp., supra. Long v. Trantham,* 226 N.C. 510, 39 S.E. 2d 384; *Self Help Corp. v. Brinkley,* 215 N.C. 615, 2 S.E. 2d 889; *Martin v. Bundy,* 212 N.C. 437, 193 S.E. 831; *McNeely v. Walters,* 211 N.C. 112, 189 S.E. 114; *Scott v. Bryan,* 210 N.C. 478, 187 S.E. 756; *Thomas v. Conyers,* 198 N.C. 229, 151 S.E. 270; *Bank v. Winder,* 198 N.C. 18, 150 S.E. 489. The test is satisfied in the case at bar.

Plaintiff offered no evidence to support the allegations in its complaint and its argument on appeal that the Auction Company was the agent of Shivar. In fact, all the evidence tends to show the contrary.

Where only one inference can reasonably be drawn from undisputed facts, the question is one of law for the court. *Hawkins v. Finance Corp., supra.* There being no evidence to support plaintiff's claim, nonsuit was properly entered.

The judgment of the trial court is

Affirmed.

CAMPBELL and PARKER, JJ., concur.